J-E02002-18

2018 PA Super 313

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| STEVEN PREDMORE, | |
| Appellee | No. 238 EDA 2017 |

Appeal from the Order Entered December 12, 2016
In the Court of Common Pleas of Monroe County
Criminal Division at No(s): CP-45-CR-0000062-2016

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., PANELLA, J., SHOGAN, J.,
LAZARUS, J., STABILE, J., DUBOW, J., NICHOLS, J., and
MCLAUGHLIN, J.

OPINION BY BENDER, P.J.E.:                     **FILED NOVEMBER 27, 2018**

The Commonwealth filed this interlocutory appeal from the trial court's order granting Appellee's, Steven Predmore, *habeas corpus* motion to dismiss a charge of attempted murder.  The trial court ruled that the Commonwealth failed to present *prima facie* evidence of Appellee's specific intent to kill the victim.  The Commonwealth argues that it demonstrated Appellee's specific intent to kill under the *prima facie* standard based solely on evidence that Appellee had taken a substantial step toward the commission of a first-degree murder.  After careful review, we affirm.

The trial court summarized the pertinent factual and procedural history of this case as follows:

On December 12, 2015, at or about 12:45 a.m., Alex Marsicano was driving past his ex-girlfriend's residence when he noticed [Appellee]'s vehicle. Mr. Marsicano stopped near [Appellee]'s vehicle. As he was leaving the residence, [Appellee] appeared in the parking lot. A confrontation occurred between [Appellee] and Mr. Marsicano when Cheyenne Eberhart, Mr. Marsicano's ex-girlfriend, broke up the fight. [Appellee] then retrieved a gun from his vehicle. [Appellee] fired 3 shots, two shots struck the back of Mr. Marsicano's calves and the third shot missed. [Appellee] then left the scene in his vehicle. Mr. Marsicano contacted a friend who subsequently took him to the hospital. When interviewed by the police, [Appellee] indicated that he was acting in self-defense and that he just wanted to stop the beating.

On January 15, 2016, the Commonwealth filed a Criminal Information charging [Appellee] with Attempted Criminal Homicide, 18 Pa.C.S.[] § 901(a), (F1); Aggravated Assault, 18 Pa.C.S.[] § 2702(a)(4), (F2); Simple Assault, 18 Pa.C.S.[] § 2701(a)(2), (M2); and Recklessly Endangering Another Person, 18 Pa.C.S.[] § 2705, (M2).

Trial Court Opinion (TCO), 12/12/16, at 1-2 (citations omitted).

Appellee filed the at-issue *habeas corpus* motion on May 16, 2016. Following a hearing held on June 20, 2016, to address the matter, the court granted Appellee's *habeas* motion on December 12, 2016, thereby dismissing the attempted homicide charge.

The Commonwealth filed a timely notice of appeal on January 3, 2017, and certified its compliance with Pa.R.A.P. 311(d) ("**Commonwealth appeals in criminal cases.--**In a criminal case, under the circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution."). The Commonwealth also filed a timely, court-ordered

Pa.R.A.P. 1925(b) statement on January 17, 2017. The trial court subsequently issued a Rule 1925(a) statement on February 7, 2017, indicating that it would rely upon its December 12, 2016 opinion that accompanied the order under review.

On October 4, 2017, a unanimous panel of this Court issued a memorandum decision affirming the trial court's order dismissing the attempted murder charge. The Commonwealth filed a timely application for reargument on October 13, 2017, and, on November 30, 2017, this Court issued an order granting reargument and withdrawing the panel's memorandum. The Commonwealth now presents the following question for our review:

> Whether the trial court erred by dismissing count 1 of the criminal information charging attempt to commit criminal homicide after the charge had been bound over following a preliminary hearing and despite the Commonwealth['s] presenting evidence of record that the [Appellee] acted with a specific intent to kill when he retrieved a Ruger 9mm pistol from his vehicle, put a clip in the pistol, aimed and fired three shots at the retreating victim, striking the victim in the legs?

Commonwealth's Substituted Brief for *En Banc* Reargument (hereinafter "Commonwealth's Brief"), 12/14/17, at 5 (unnecessary capitalization omitted).

> We review a decision to grant a pre-trial petition for a writ of *habeas corpus* by examining the evidence and reasonable inferences derived therefrom in a light most favorable to the Commonwealth. **Commonwealth v. James**, 863 A.2d 1179, 1182 (Pa. Super. 2004) (*en banc*). In **Commonwealth v. Karetny**, 583 Pa. 514, 880 A.2d 505 (2005), our Supreme Court found that this Court erred in applying an abuse of discretion

standard in considering a pre-trial *habeas* matter to determine whether the Commonwealth had provided *prima facie* evidence. The **Karetny** Court opined, "the Commonwealth's *prima facie* case for a charged crime is a question of law as to which an appellate court's review is plenary." **Id.** at 513, 880 A.2d 505; **see also Commonwealth v. Huggins**, 575 Pa. 395, 836 A.2d 862, 865 (2003) ("The question of the evidentiary sufficiency of the Commonwealth's *prima facie* case is one of law[.]"). The High Court in **Karetny** continued, "[i]ndeed, the trial court is afforded no discretion in ascertaining whether, as a matter of law and in light of the facts presented to it, the Commonwealth has carried its pre-trial, *prima facie* burden to make out the elements of a charged crime." **Karetny**, **supra** at 513, 880 A.2d 505. Hence, we are not bound by the legal determinations of the trial court.

**Commonwealth v. Dantzler**, 135 A.3d 1109, 1111–12 (Pa. Super. 2016).

A petition for writ of *habeas corpus* is the correct method for a defendant to test whether the Commonwealth has, before trial, established a *prima facie* case. **Commonwealth v. Karlson**, 449 Pa. Super. 378, 674 A.2d 249, 251 (1996). To demonstrate that a *prima facie* case exists, the Commonwealth must produce evidence of every material element of the charged offense(s) as well as the defendant's complicity therein. **Commonwealth v. Fowlin**, 450 Pa. Super. 489, 676 A.2d 665, 673 (1996). In an effort to meet its burden, the Commonwealth may utilize the evidence presented at the preliminary hearing and also may submit additional proof. **Id.**

Proof beyond a reasonable doubt is not required at the *habeas* stage, but the Commonwealth's evidence must be such that, if accepted as true, it would justify a trial court in submitting the case to a jury. **Id.** Additionally, in the course of deciding a *habeas* petition, a court must view the evidence and its reasonable inferences in the light most favorable to the Commonwealth. **Id.** Suspicion and conjecture, however, are unacceptable. **Id.**

**Commonwealth v. Carroll**, 936 A.2d 1148, 1152 (Pa. Super. 2007) (abrogation on other grounds recognized in **Dantzler**, **supra**).

We begin our analysis with a summary of the pertinent law concerning the crime of attempted murder. "A person commits an attempt when, **with**

***intent to commit a specific crime***, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901(a) (emphasis added). "Criminal attempt to murder is defined by reading the attempt statute, 18 Pa.C.S. § 901(a), in conjunction with the [first-degree] murder statute, 18 Pa.C.S. § 2502(a)." ***Commonwealth v. Anderson***, 650 A.2d 20, 23 (Pa. 1994). Thus, a "conviction for attempted murder requires the Commonwealth to prove beyond a reasonable doubt that the defendant had the specific intent to kill and took a substantial step towards that goal." ***Commonwealth v. Blakeney***, 946 A.2d 645, 652 (Pa. 2008). In sum, attempted murder is composed of two primary elements. The *mens rea* element of the offense is specific intent to kill, which is identical to the *mens rea* element of murder in the first degree.[1] The *actus reus* element of the offense is the commission of one or more acts which collectively constitute a substantial step toward the commission of a killing.

---

[1] Thus, the crimes of attempted murder in the second degree and attempted murder in the third degree do not exist. ***See Commonwealth v. Griffin***, 456 A.2d 171, 177 (Pa. Super. 1983). Neither second- nor third-degree murder require a showing of specific intent to kill. Attempted murder is, by definition, attempted first-degree murder. As this Court explained in ***Griffin***:

> While a person who only intends to commit a felony may be guilty of second degree murder if a killing results, and a person who only intends to inflict bodily harm may be guilty of third degree murder if a killing results[,] it does not follow that those persons would be guilty of attempted murder if a killing did not occur. They would not be guilty of attempted murder because they did not intend to commit murder—they only intended to commit a felony or to commit bodily harm.

***Id.***

Instantly, the crux of the Commonwealth's argument is as follows:

Here, [Appellee] went to his vehicle and retrieved a pistol from the glove box of the vehicle and put a clip in the pistol, cocked it and then pointed it at Alexander Marsicano. [Appellee] then fired three shots at Alexander Marsicano as Alexander Marsicano was attempting to run away, striking him in both legs. Under the substantial step test, and focusing on the acts [Appellee] completed, not on the acts that remain for the actual commission of the crime, the trial court erred by concluding that the Commonwealth failed to establish a *prima facie* case for the charge of [a]ttempted [h]omicide. Based on the actions [Appellee] took, the fact finder could have reasonably found that [Appellee] took a substantial step toward the intentional[] killing of Alexander Marsicano.

Commonwealth's Brief at 16.

The trial court determined that the Commonwealth failed to establish a *prima facie* case for the *mens rea* element of the offense: specific intent to kill. TCO at 4 ("Given these facts, we cannot find that [t]he specific intent to kill has been established."). That ruling was a direct response to Appellee's *habeas* motion, wherein the defense had argued that the Commonwealth failed, under the *prima facie* standard, to provide evidence of Appellee's specific intent to kill Marsicano, not that the evidence was insufficient to establish that Appellee had taken a substantial step toward killing him. Appellee's *Habeas Corpus* Motion, 5/16/16, at 2 ¶ 5 (unnumbered pages).

In this context, it is clear that the Commonwealth's argument conflates the *actus reus* and *mens rea* elements of attempted murder. Unfortunately, the courts of this Commonwealth may have inadvertently prompted such confusion by occasionally utilizing a short-hand definition of the elements of

attempted murder: *a substantial step toward an intentional killing*. One does not commit the crime of attempted murder by taking a substantial step toward forming or possessing the intent to kill, whatever that would mean. A person commits the crime of attempted murder when, *while* possessing the intent to kill, he or she takes a substantial step toward killing the victim.

Here, for the purposes of this appeal, it is undisputed that Appellee took a substantial step toward the commission *of a killing*. As described by the Commonwealth,

> [t]he finder of fact could reasonably find that aiming a gun at the victim initially at chest to face level, the victim having to turn to run away when [Appellee] drew his firearm, [Appellee's] firing three shots at the victim, [and] the victim having been shot twice in the calf, establishes that [Appellee] took a substantial step toward the intentional[] killing of Alexander Marsicano.

Commonwealth's Brief at 18. The problematic portion of the Commonwealth's argument is the placement of the term, *intentional*, immediately preceding the term *killing*. Again, the crime of attempted murder occurs when "the defendant had the specific intent to kill **and** took a substantial step towards that goal." **Blakeney**, 946 A.2d at 652 (emphasis added). Here, the Commonwealth only describes its proof of the *actus reus* element of attempted murder, and then summarily concludes that the *mens rea* element naturally follows from the proof of the former. Absent invocation of a relevant presumption of law, as discussed below, or some relevant analysis of the manner in which the circumstantial evidence (including, but not limited to, the

acts which satisfy the *actus reus* element), this argument is wholly unconvincing.

The Commonwealth cites **Commonwealth v. Jackson**, 955 A.2d 441 (Pa. Super. 2008), in support of its claim. However, our decision in **Jackson** involved the substantial step test, *i.e.*, the *actus reus* of the offense of attempted murder, not the *mens rea* element, further demonstrating the Commonwealth's conflation of the *actus reus* and *mens rea* elements of attempted murder in this case, or its misunderstanding of the basis for the trial court's ruling under review. In **Jackson**, the appellant challenged the sufficiency of the evidence supporting his conviction based on the argument that "the Commonwealth did not prove that [the a]ppellant had a gun or that he aimed or fired it at" the victim, Detective Dove. **Id.** at 445. We rejected that claim, because "the finder of fact could have reasonably inferred that [the a]ppellant had his gun in hand at that time[,]" and because "the fact finder could have reasonably found that [the a]ppellant took a substantial step toward intentionally killing the detective" based on the specific circumstances of that case.[2] **Id.** For the reasons stated above, the inclusion of the term

---

[2] Immediately prior to the specific moment in time that gave rise to Jackson's conviction for attempted murder, Jackson had engaged in a gun battle with the detective and other police officers, where Jackson and his cohorts had fired "between 50 and 80 shots" at the officers. **Id.** at 443. In its brief, the Commonwealth misstates or misrepresents these facts, suggesting that Jackson had only been shooting at another man, Wesley, just prior to his flight from Detective Dove. Commonwealth's Brief at 15. That might suggest that Jackson had formed the specific intent to kill Detective Dove solely by raising

"intentionally" in the **Jackson** Court's statement was unfortunate, because Jackson had not challenged his conviction for attempted murder by alleging insufficient evidence of his specific intent to kill Detective Dove. Clearly, **Jackson** was not a specific-intent-to-kill case at all and, therefore, it is not controlling or even informative here.

Despite the Commonwealth's repeated conflation of the elements of attempted murder, it is still incumbent upon this Court to review whether the trial court erred when it determined that the facts and the *reasonable* inferences derived therefrom, considered in a light most favorable to the Commonwealth, did not justify placing the charge of attempted murder before a jury. Here, the facts themselves are not in serious dispute. The core issue is whether the reasonable inferences derived from those facts would permit a jury to conclude that Appellee possessed the specific intent to kill. More specifically, the question is whether the *prima facie* evidence produced by the Commonwealth could give rise to a *reasonable* inference that Appellee intended to kill Marsicano. We agree with the trial court that there is no

_____

his firearm when being pursued by Detective Dove. However, Detective Dove was investigating the shooting of Wesley which "occurred earlier in the day[.]" *Id.* at 442. While investigating the earlier shooting, Jackson and his cohorts *again* attacked Wesley while the police were present, and a gunfight with police erupted. *Id.* Not surprisingly, then, Jackson did not challenge whether he possessed the intent to kill Detective Dove, given that that he had engaged in a massive firefight with police, including Detective Dove, just moments before the specific event which led to his conviction for attempted murder. In other words, there was ample evidence of Jackson's intent to kill beyond the mere fact that he had raised his weapon during the pursuit by Detective Dove.

*reasonable* inference of specific intent to kill that one can draw from the narrow factual circumstances of this case.

What is reasonable in any given case is not easily susceptible to bright-line rules, as no such rule could ever hope to encompass all potential circumstances. However, the courts of this Commonwealth have established some touchstones to guide us with respect to intent-to-kill jurisprudence. For instance, it is axiomatic that "[s]pecific intent to kill **may** be inferred from the use of a deadly weapon on a vital part of the victim's body." **Commonwealth v. Uderra**, 706 A.2d 334, 338 (Pa. 1998) (emphasis added). More specifically, the "use of a deadly weapon directed at a vital organ of another human being justifies a factual presumption that the actor intended death unless the testimony contains additional evidence that would demonstrate a contrary intent." **Commonwealth v. Alston**, 317 A.2d 229, 231 (Pa. 1974). This axiom clearly does not directly apply in the circumstances of this case, as Appellee did not shoot Marsicano in a vital organ of his body, or thereabouts. Instead, Marsicano only suffered injury in the lower part of his legs.[3] If Appellee intended that result, then he necessarily did not shoot with the specific intent to kill Marsicano, absent extraordinary and unique factual circumstances not present in this case. If Appellee nevertheless intended to kill Marsicano, but simply failed to accomplish his goal, the Commonwealth

---

[3] The Commonwealth does not dispute that the victim's calves are not vital portions of his body within the meaning of the presumption.

bears the burden to demonstrate that the evidence supports that inference with something more than "[s]uspicion and conjecture[.]" ***Carroll***, 936 A.2d at 1152.

To be clear, the absence of the use of a deadly weapon against a vital part of a victim's body does not preclude a finding of intent to kill, it only precludes the use of the presumption. ***See Commonwealth v. Kluska***, 3 A.2d 398, 402 (Pa. 1939) (noting that the absence of the presumption does not comprehensively rebut a finding of intent to kill, especially in cases where a killing is accomplished by "strangulation or drowning"). In the absence of that presumption, however, the Commonwealth must still produce *some* evidence of specific intent to kill. ***Carroll***, 936 A.2d at 1152.

For instance, in ***Commonwealth v. Cross***, 331 A.2d 813 (Pa. Super. 1974), the defendant argued that the Commonwealth failed to offer evidence of his intent to kill when he fired a gun at a victim's vehicle. The victim did not sustain any injuries, as the bullet fortunately lodged in the door of his car. However, this Court affirmed Cross's conviction for attempted murder, because the evidence demonstrated a "long standing feud" between him and the victim's brother. ***Id.*** at 814. Additionally, immediately prior to firing the shot at the victim, Cross yelled out, "This is for your brother." ***Id.*** Moreover, the bullet had "penetrated the outer panel of the automobile door at a height near the stomach of" the victim. ***Id.*** at 815.

In the case *sub judice*, by contrast, the Commonwealth did not proffer any evidence that Appellee verbally indicated, directly or indirectly, his intent

to kill Marsicano, nor did any other circumstantial evidence suggest such an intent.  In ***Cross***, the victim escaped grave harm only by an intervening metal car door.  Here, the Commonwealth offers no theory regarding why Appellee would shoot Marsicano in the lower leg if he had formed the intent to kill.  In the narrow factual circumstances of this case, poor aim is not a reasonable inference.   According to Marsicano's own testimony, Appellee fired all three shots from "2 and [a] half, 3 feet away *at the max*."  N.T. Preliminary Hearing, 1/8/16, at 12-13 (emphasis added).[4]  Thus, in a light most favorable to the Commonwealth, the facts demonstrate that Appellee fired at Marsicano from less than a yard away, yet only struck him in the calf, despite having initially

_____

[4] According to Eberhart's testimony at the preliminary hearing, Appellee fired the shots from 5 feet away, rather than from 2½-3 feet away, as Marsicano, the actual victim, contended.  ***Id.*** at 33.  It is not clear which fact adheres to the rule that we must construe the facts in a light most favorable to the Commonwealth.   Generally speaking, the Commonwealth will prefer an accounting of the facts that suggests a shooter fired from the closest possible range when seeking to prove his or her intent to kill, as the Commonwealth will argue that the close proximity itself demonstrates the required intent; yet, if the shot is fired from a greater distance, the Commonwealth seeking to prove the same intent will inevitably argue that the shooter's failure to cause more damage is a result of his poor aim, rather than the absence of his intent to kill.  Which fact is more 'favorable' to the Commonwealth is more of a philosophical question than a factual one.  Thankfully, we need not tread into that philosophical quagmire in the circumstances of this case, as the difference in distance is negligible as it pertains to our analysis.  The notion that Appellee's intent to kill is demonstrated if he fired from 5 feet away, but not from 3 feet away, is not a reasonable one.  In either case, it is clear that the evidence cannot sustain the unreasonable inference that Appellee was aiming his weapon with the intent to inflict lethal damage.  Moreover, Eberhart testified that Appellee fired the first shot *at the pavement*, casting further doubt as to which witness's version of events is more favorable to the Commonwealth.  ***See id.*** at 33-35.

aimed the gun much higher. These facts, without more, cannot support a *reasonable* inference that Appellee intended to kill Marsicano.

In ***Commonwealth v. Jackson***, 392 A.2d 1366 (Pa. 1978), the defendant argued that the Commonwealth had not offered sufficient evidence of specific intent to kill where, during the course of a robbery of a service station, he had shot an attendant in the shoulder. The attendant later died from his injuries. The ***Jackson*** Court first rejected the notion that the deadly-weapon/vital-body-part presumption cannot arise unless a vital organ is struck, instead concluding that the "firing of a ***bullet in the general area in which vital organs are located*** can in and of itself be sufficient to prove specific intent to kill beyond a reasonable doubt." ***Id.*** at 1368 (emphasis added) (quoting ***Commonwealth v. Padgett***, 348 A.2d 87, 88 (Pa. 1975)). Furthermore, other circumstances demonstrated Jackson's intent to kill. ***Id.*** at 1369 (holding that Jackson's "statement to [his accomplice] ('He knows me'), followed by his shooting, in the dark, one shot at the attendant and three at the customer, and the bullet's striking the attendant only several inches away from a vital area, all reasonably support a specific intent to kill on the part of" Jackson).

Instantly, there is no similar verbal evidence of Appellee's intent to kill. There are also no circumstances that naturally provide a motive to kill, from which the inference of an intent to kill can reasonably arise, such as are present when a robber suddenly discovers that his victim could identify him by name. Moreover, in ***Jackson***, the Court noted that the shots had been

fired in the dark, thereby providing some reasonable explanation as to why Jackson, possessing the intent to kill, shot the victim in the shoulder.

Our decision today does not conflict with our panel decisions in *Commonwealth v. Manley*, 985 A.2d 256 (Pa. Super. 2009), and *Commonwealth v. Wyche*, 467 A.2d 636 (Pa. Super. 1983). While some factual circumstances in *Manley* were similar to the facts in this case (the shooter fired from a close distance as the victim ran away), the victim in *Manley*, Taaqi Brown, was struck by five of six shots fired, in locations all about his body, including "the groin, thigh, shoulder and twice in the hand." *Manley*, 985 A.2d at 272. The *Manley* Court cited our Supreme Court's decision in *Padgett*, where that court held that it was

> not persuaded that it must be shown that the bullet fired from a revolver, a deadly weapon, initially entered a vital organ before the inference of specific intent to kill can arise. The firing of a bullet in the general area in which vital organs are located can in and of itself be sufficient to prove specific intent to kill beyond a reasonable doubt.

*Padgett*, 348 A.2d at 88. In the instant case, not only are the victim's calves not vital parts of his body, but *they are also not in the general area of any vital organs*.

Moreover, in *Manley*, additional testimony was offered to prove intent that was not present in the instant case. Following his arrest, Manley had confessed to another inmate that he shot Taaqi Brown to avenge the shooting death of his friend at the hands of one of Brown's associates. *Manley*, 985 at 260. Thus, additional evidence, beyond the mere circumstances of the

- 14 -

shooting itself and locations of the wounds, tended to demonstrate Manley's specific intent to kill. No such evidence is present in the instant case.

In *Wyche*, another case upon which the *Manley* Court relied, the victim died after being shot in the hand, thigh, and pelvic area, the latter bullet having caused "damage[ to] major blood vessels and internal organs after entry." *Wyche*, 467 A.2d at 637. Citing *Padgett*, the *Wyche* Court concluded that, "[a]lthough the fatal slug entered the victim through the buttock, the jury could properly infer the specific intent to kill from these circumstances." *Id.* It should be obvious that damage to major blood vessels *and internal organs* caused by a gunshot constitutes a wound to vital parts of the victim's body. Nevertheless, by citing *Padgett*, the *Wyche* Court indicated that it was close enough for purposes of invoking the vital wound inference, as it was in the "general area in which vital organs are located." *Padgett*, 348 A.2d 88. Again, no such evidence exists in this case.

*Manley*, *Padgett*, and *Wyche* all involve determinations that the deadly-weapon/vital-body-part presumption was properly invoked. That presumption cannot be raised under the facts of this case and, therefore, those decisions are not controlling here.

When we review evidence in a light most favorable to the Commonwealth, we are not obliged to outright ignore undisputed evidence so as to strengthen the reasonableness of inferences we draw from the remaining evidence. Instead, we review all of the evidence, and ascertain whether certain inferences suggested by the Commonwealth are reasonable; that is,

whether it is reasonable to permit a jury to conclude that Appellee possessed the specific intent to kill Marsicano in the unique circumstances of this case. In this regard, the Commonwealth essentially asks this Court to ignore: the victim's unprovoked instigation of a confrontation with the new boyfriend of his ex-girlfriend, the complete lack of any verbal expression of intent to kill by Appellee despite the scuffle that occurred before the shooting, and the near impossibility of Appellee's missing any area near a vital portion of the victim's body from the range at which he fired, but for an intent to scare or harm that fell short of specific intent to kill. To ask a jury to find that Appellee possessed the specific intent to kill in these circumstances is tantamount to asking them to rest a verdict on mere speculation or conjecture that Appellee just happens to be the world's worst shot, or that the victim only escaped more serious injury due to divine intervention. While not impossibilities in the strictest sense, such inferences are simply not reasonable in the unique circumstances of this case.

Thus, we conclude that the Commonwealth failed to produce "evidence of every material element of the charged offense[,]" attempted murder, namely, the *mens rea* element of specific intent to kill. **Carroll**, 936 A.2d at 1152. Accordingly, we ascertain no error in the trial court's granting Appellee's *habeas* motion striking the charge of attempted murder.

Order **affirmed**. Case **remanded**. Jurisdiction **relinquished**.

President Judge Gantman, Judge Panella, Judge Shogan, Judge Lazarus, Judge Dubow and Judge Nichols join this opinion.

Judge Stabile files a dissenting opinion.

Judge McLaughlin files a dissenting opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/27/18