J-S42011-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
:
v. :
:
:
:
BRUCE DEWAYNE JONES :
:
Appellant : No. 414 WDA 2022

Appeal from the Judgment of Sentence Entered September 6, 2021
In the Court of Common Pleas of Fayette County Criminal Division at
No(s):  CP-26-CR-0000928-2019

BEFORE:   BOWES, J., OLSON, J., and COLINS, J.[*]

MEMORANDUM BY BOWES, J.:                    **FILED: January 19, 2023**

Bruce DeWayne Jones appeals *nunc pro tunc* from his September 6, 2021 judgment of sentence of eight and one-half to twenty years of incarceration imposed after a jury found him guilty of attempted homicide, firearms offenses, criminal mischief, and multiple counts of recklessly endangering another person ("REAP") and aggravated assault.  We affirm.

The trial court summarized the factual history of this matter as follows:

On December 22, 2018, Vanessa Maison, Dustin Johnson, and Carter Smith went out to a party at a fire hall and then to Alibis Bar in Redstone Township, Fayette County.  After they left the bar, they went to . . . a Christmas party[.]  The three friends were traveling that night in Mr. Johnson's gray 2018 Jeep Renegade, which he had just bought earlier that month.

The three were at [the Christmas party] for about an hour to an hour-and-a-half, mingling with other partygoers . . . .  All three

_____

[*] Retired Senior Judge assigned to the Superior Court.

friends encountered Appellant that evening although none were [*sic*] acquainted with him before the party. All three were able to identify Appellant during trial.

Sometime around midnight, Appellant was in the kitchen, singing or rapping over the music that was playing. Mr. Smith laughed or smirked at something that Appellant sang/rapped, and Appellant asked him what was funny and proceeded to "get smart" with him. Mr. Smith told Appellant that his performance was not good, and the two began to argue.

At about the same time, Mr. Johnson was preparing to leave. He first saw Ms. Maison and told her he was leaving. He then saw Mr. Smith and Appellant in the kitchen and told Mr. Smith that he was leaving. Mr. Johnson then headed outside to his car and got in the driver's seat. Ms. Maison followed him and went to the front passenger seat. Mr. Smith followed behind her and Appellant was behind him, still arguing . . . as they walked out of the house.

Mr. Smith testified that, once outside, he heard Appellant say something like, "You better get out of here," and call him a racial slur. He then saw Appellant pull out a semi-automatic pistol and hold it across his own chest. Mr. Smith responded, "You really need a fucking gun?" and began walking away.

As he walked away, he heard a gunshot. He got in the rear passenger's side seat of the car, behind Ms. Maison, and saw Appellant shoot [the front passenger] door twice. All three of the friends heard more popping sounds, and Mr. Johnson sped off. Mr. Smith testified that there were shots fired at the back of the vehicle as they drove away. Neither Mr. Johnson nor Ms. Maison saw Appellant fire the weapon, but both testified that he was the only person that had followed them all outside. Mr. Smith did testify that he saw Appellant fire the weapon. Mr. Johnson also testified that nobody in their group had a gun with them.

After they sped off in Mr. Johnson's vehicle, Mr. Smith exclaimed that he had been shot, a wound he sustained to the upper right buttock. Mr. Johnson drove to Mr. Smith's house, and Mr. Smith afterward had his father take him to Uniontown Hospital where he was treated for his injury. . . .

Several Pennsylvania State Troopers involved in the investigation testified at trial. Corporal Richard Hunter took photographs of the

damage to the 2018 Jeep Renegade the following day. He described the bullets that were found in the vehicle and testified that there was blood on the carpet of the back seat. Mr. Johnson later testified that the damage to his vehicle totaled around $7,200. Corporal Hunter also testified that he found bullet casings outside of the [location of the Christmas party].

Trooper Adam Janosko also investigated the incident and was involved in determining that Appellant was the one who fired the gun. He also testified that no weapon was recovered, but the evidence suggested that a .380-caliber semi-automatic pistol was used. Troop Janosko also testified that Appellant did not have a license to carry a concealed weapon, and there was a stipulation that Appellant was not permitted to possess a firearm because of a prior adjudication.

Trial Court Opinion, 5/27/22, at 3-5 (cleaned up).

Appellant was arrested and charged with the aforementioned offenses. Pertinent to our disposition, we note that neither the attempted homicide charge nor any of the aggravated assault charges related to Mr. Johnson and Ms. Maison, but were brought only as to Mr. Smith. Appellant was also charged with possession of firearm prohibited.

Following a jury trial held on August 6 and 7, 2019, Appellant was found guilty of all charges. On September 6, 2019, the trial court sentenced him to an aggregate term of eight and one-half to twenty years of imprisonment. No post-sentence motions were filed. Appellant filed an initial, timely direct appeal and submitted a concise statement of errors pursuant to Pa.R.A.P. 1925(b) while represented by counsel. Following the completion of a *Grazier*

hearing, Appellant elected to proceed *pro se* on appeal.[1]  *See* N.T. *Grazier* Hearing, 4/17/20, at 2-18.  Ultimately, the appeal was dismissed after Appellant failed to file an appellate brief.  *See* Order, 6/9/21, at 1.

Thereafter, Appellant filed a timely, *pro se* petition for relief pursuant to the Post-Conviction Relief Act ("PCRA").  Counsel was appointed and an amended petition was submitted, which alleged prior counsel had been ineffective by failing to raise several issues in Appellant's counseled Rule 1925(b) statement.  The Commonwealth did not oppose the relief sought.  On March 17, 2022, the PCRA court granted Appellant's petition and reinstated his direct appellate rights.  Thereafter, he filed a timely notice of appeal *nunc pro tunc* and submitted a supplemental Rule 1925(b) statement.  The trial court filed a revised Rule 1925(a) opinion addressing these new issues.

Appellant has raised the following issues for our consideration:

1. Was the evidence presented at trial by the Commonwealth sufficient to establish the elements of attempted homicide; specifically that [Appellant] acted with a specific intent to kill?

2. Was the evidence presented at trial by the Commonwealth sufficient to establish the elements of aggravated assault; specifically was sufficient evidence presented that [Appellant] fired a handgun or other firearm in the direction of the alleged victim or that the alleged victim sustained any wound which would constitute "serious bodily injury"?

---

[1] *See Commonwealth v. Grazier*, 713 A.2d 81, 82 (Pa. 1998) ("When a waiver of the right to counsel is sought at the post-conviction and appellate stages, an on-the-record determination should be made that the waiver is a knowing, intelligent, and voluntary one.")

3. Did the trial court err as a matter of law by allowing unqualified testimony of medical opinion?

4. Did the trial court err as a matter of law by allowing unqualified expert opinion testimony in the field of forensic investigation?

Appellant's brief at 1-2 (unpaginated; cleaned up).[2]

Appellant's first two appellate issues concern the sufficiency of the Commonwealth's evidence. We will bear in mind the following well-established legal principles in considering these arguments:

> Our standard of review in assessing whether sufficient evidence was presented to sustain an appellant's conviction is well-settled. The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [this] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of

---

[2] Despite spanning nearly three hundred pages, Appellant's combined brief and reproduced record are not properly paginated pursuant to Pa.R.A.P. 2173. This omission largely renders the tables of contents and authorities pursuant to Pa.R.A.P. 2174 irrelevant. Moreover, given the length of this submission, Appellant has also violated Pa.R.A.P. 2171(b), which requires that the brief and reproduced record be bound separately if the filings exceed 100 pages in combined length. Relatedly, Appellant has not included a certificate of compliance attesting that his thirty-six-page brief complies with the length requirements set forth by our Rules of Appellate Procedure. *See* Pa.R.A.P. 2135(a)(1). Finally, Appellant's brief was filed more than one week late.

We admonish counsel and remind him that briefs and reproduced records must "conform in all material respects with the requirements" of the Pennsylvania Rules of Appellate Procedure "as nearly as the circumstances of the particular case will admit, otherwise they may be suppressed, and, if the defects are in the brief or reproduced record of the appellant and are substantial, the appeal or other matter may be quashed or dismissed." Pa.R.A.P. 2101. Nonetheless, we decline to dismiss this appeal.

innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Boyer*, 282 A.3d 1161, 1171 (Pa.Super. 2022) (cleaned up).

In his first claim for relief, Appellant has challenged his conviction for attempted homicide on the grounds that the Commonwealth did not adduce sufficient evidence of his specific intent to kill Mr. Smith. *See* Appellant's brief at 9-10 (arguing that the Commonwealth's evidence "only established that Appellant fired a firearm at the 2018 Jeep Renegade which Mr. Smith was inside"); *see also* 18 Pa.C.S. §§ 901(a), 2502. In order for a defendant to be found guilty of attempted homicide, the Commonwealth must "establish the *mens rea* required for first-degree murder, specific intent to kill[.]"[3] *Commonwealth v. Fortson*, 165 A.3d 10, 15 (Pa.Super. 2017) (cleaned up). This burden may be satisfied by circumstantial evidence. *Id*. Where the defendant does not "verbalize the reasons for his actions, we are forced to

---

[3] Accordingly, "the crimes of attempted murder in the second degree and attempted murder in the third degree do not exist." *Commonwealth v. Predmore*, 199 A.3d 925, 929 n.1 (Pa.Super. 2018) (*en banc*).

look to the act itself to glean the intentions of the actor." ***Commonwealth v. Hall***, 830 A.2d 537, 542 (Pa. 2003) (citation omitted). To the extent "the intention of the actor is obvious from the act itself, the finder of fact is justified in assigning the intention that is suggested by the conduct." ***Id***. Thus, we may "infer that one intends the natural and probable consequences of his acts[.]" ***Commonwealth v. Gease***, 696 A.2d 130, 133 (Pa. 1997).

Viewed in the light most favorable to the Commonwealth, the evidence at trial demonstrated that an argument erupted between Appellant and Mr. Smith, which escalated as Mr. Smith and his friends left the party ***See*** N.T. Trial, 8/6/19, at 80-82. As Mr. Smith and his friends reached the Jeep, Appellant referred to Mr. Smith using a racial epithet while holding a "semi-automatic pistol" against his chest. ***Id***. at 82. Then, Appellant aimed his firearm at the general area of the vehicle in which Mr. Smith was seated and discharged it several times. ***Id***. at 39-40, 47, 100. One of the bullets struck and injured Mr. Smith. ***Id***. at 85, 109-10. Appellant stipulated that he was prohibited from possessing firearms. ***See*** N.T. Trial, 8/7/19, at 165-66.

This evidence was sufficient to establish Appellant's specific intent to kill Mr. Smith. As a logical starting point, it bears noting that "[a] gun is a lethal weapon; pointing it towards a person, and then discharging it, speaks volumes as to one's intention." ***Commonwealth v. Hall***, 830 A.2d 537, 543 (Pa. 2003). Indeed, the simple fact that Appellant was "illegally armed" with a firearm on the night in question is indicative of his specific intent to kill as a

matter of law. *See Commonwealth v. Fortson*, 165 A.3d 10, 16 (Pa.Super. 2017) (citing 18 Pa.C.S. § 6104). We also derive guidance from *Commonwealth v. Cross*, 331 A.2d 813 (Pa.Super. 1974), wherein this Court upheld a defendant's attempted homicide conviction under similar circumstances. Following a personal, long-standing "feud," Cross attempted to shoot the victim, who was seated in the passenger seat of an automobile. The bullet struck the vehicle at "a height near the stomach" of the victim, but "narrowly missed." *Id*. at 813-14. Based upon these facts, this Court held it was "entirely proper" to conclude that Cross "did intend to kill as required under the statute, for his deliberately fired shot narrowly missed striking a vital part of his target." *Id*. at 815

Here, as in *Cross*, Appellant's shooting of Mr. Smith was the product of a personal dispute. Specifically, Appellant's actions were the culmination of a heated argument with Mr. Smith that included menacing language and gestures that generally evinced violent intent on Appellant's part. While this dispute was not a protracted, familial matter as in *Cross*, it is well-established that the requisite intent to kill another "may be formed in an instant." *Commonwealth v. Mollett*, 5 A.3d 291, 313 (Pa.Super. 2010). Also as in *Cross*, Appellant deliberately attempted to shoot Mr. Smith, as confirmed by the bullet hole that is lined up with Mr. Smith's seat in the vehicle. Moreover, unlike in *Cross*, Mr. Smith was actually struck by one of Appellant's bullets and sustained an injury. While this injury did not threaten Mr. Smith's life,

"[t]he Pennsylvania courts have held that the necessary intent for attempted murder may be inferred from a defendant's conduct of taking aim and firing a shot that narrowly misses the vital organs of another human being."[4] ***Commonwealth v. Jones***, 629 A.2d 133, 135 n.2 (Pa.Super. 1993).

Under these circumstances, we have little trouble concluding that an individual who deliberately aims and fires a pistol multiple times at the occupant of a car and succeeds in wounding him has manifested a specific intent to kill. **See Cross**, **supra**; **Jones**, **supra**. No relief is due.

Appellant's second sufficiency claim concerns his aggravated assault convictions, which he challenges upon the same grounds as his attempted homicide conviction. **See** Appellant's brief at 11 (unpaginated) ("[T]he Commonwealth's *mens rea* evidence relevant to aggravated assault is insufficient for the same reasons as it was insufficient relevant to the offense of [a]ttempted [h]omicide."). Instantly, Appellant was charged and convicted of aggravated assault at 18 Pa.C.S. § 2702(a)(1) ("A person is guilty of aggravated assault if he attempts to cause serious bodily injury to another, or causes such injury intentionally[.]") and 18 Pa.C.S. § 2702(a)(4) ("A person

---

[4] It is practically axiomatic that "the use of a deadly weapon directed at a vital organ of another human being justifies a factual presumption that the actor intended death[.]" ***Commonwealth v. Predmore***, 199 A.3d 925, 931 (Pa.Super. 2018) (*en banc*). However, "the absence of the use of a deadly weapon against a vital part of a victim's body does not preclude a finding of intent to kill, it only precludes the use of the presumption." ***Id***. at 932. Thus, while we are not prepared to characterize Mr. Smith's injuries in this matter as implicating a "vital organ," such a conclusion is not dispositive.

is guilty of aggravated assault if he attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon[.]").

The same conduct discussed above that established Appellant's specific intent to kill Mr. Smith is also sufficient to establish that Appellant possessed the intent to cause "serious bodily injury" and "bodily injury" to Mr. Smith. **See** 18 Pa.C.S. § 2702(a)(1), (4). Accordingly, the Commonwealth's offer of proof with respect to Appellant's *mens rea* regarding attempted homicide was also legally sufficient as a matter of law to support Appellant's convictions for aggravated assault. **Id**. Thus, Appellant's second claim merits no relief.

Appellant's third issue concerns testimony offered by Trooper Janosko, who opined as follows with respect to Mr. Smith's injury: "[H]e had a wound to his right buttock that appeared to be what we call a through and through wound. Which means the bullet entered and it passed right through his body and went whenever it would of went." N.T. Trial, 8/6/19, at 110. Appellant characterizes this as "unqualified medical testimony" and argues that Trooper Janosko exceeded the scope of speculation permitted by lay witnesses pursuant to Pa.R.E. 701 and 702. **See** Appellant's brief at 26-30.

It is axiomatic that "[i]n order to preserve an issue for review, a party must make a timely and specific objection at trial." **Commonwealth v. Konias**, 136 A.3d 1014, 1022 (Pa.Super. 2016). Accordingly, "[t]he absence of a contemporaneous objection below constitutes a waiver of the claim on appeal." **Commonwealth v. Rodriguez**, 174 A.3d 1130, 1145 (Pa.Super.

2017) (cleaned up); *see also* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Instantly, our review of the transcripts reveals that no objection was entered at trial with respect to Trooper Janosko's complained-of testimony describing Mr. Smith's wound. Accordingly, this claim is waived. *Id*.

Finally, Appellant challenges various aspects of the testimony of Trooper Janosko and Corporal Hunter concerning the forensic evidence in the case. *See* Appellant's brief at 30 ("[T]he [t]rial [c]ourt erred as a matter of law . . . by allowing the introduction at trial of unqualified opinion testimony proffered by [Trooper Janosko] and [Corporal Hunter] in the field of forensic investigations and/or analysis."). Our review of the certified transcripts, however, confirms that no contemporaneous objections were entered with respect to the various aspects of testimony that Appellant references in this argument. *Compare* Appellant's brief at 30-36 *with* N.T. Trial, 8/6/19, at 34-47, 106-32. Thus, these allegations are waived for failure to raise them in the trial court. *See* Pa.R.A.P. 302(a); *Rodriguez*, *supra* at 1145.

As Appellant has advanced no preserved claim that merits relief in this appeal, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/19/2023