J-S10015-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
DAVID CHARLES SERIO :
:
Appellant : No. 1073 MDA 2024

Appeal from the Judgment of Sentence Entered June 27, 2024
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0001043-2023

BEFORE: BOWES, J., OLSON, J., and SULLIVAN, J.

MEMORANDUM BY BOWES, J.: **FILED MAY 13, 2025**

David Charles Serio appeals from the aggregate sentence of eight years and three months to eighteen years and six months of imprisonment, followed by five years of probation, imposed for multiple convictions for shooting his ex-girlfriend. We affirm.

We glean the following background from the certified record. In the early morning hours of February 1, 2023, Appellant's former girlfriend, Linda Spicer, was getting ready for work in Appellant's house. While she was doing so, Appellant was "hounding her" about a recent hack of his computer, accusing her of orchestrating the breach. *See* N.T. Trial, 3/4-7/24, at 110. He continued to follow her around the house and eventually out to her car in the driveway as she was leaving for her shift. After she entered her vehicle, Ms. Spicer "immediately" heard gunshots and felt a stinging pain in her left

shoulder. *Id*. at 117. When she turned around, she saw Appellant standing ten to fifteen feet away, pointing a gun at her. The victim quickly put keys into the ignition and started the car when she was shot in the hand. Blood was "dripping" as she "floored it in reverse" to escape. *Id*. at 118.

A few minutes later, Ms. Spicer arrived at a factory parking lot and called 911. Her right hand continued to bleed, and she had severe pain in her left shoulder. Emergency personnel and officers from the Northern York County Regional Police responded. Upon arrival, Officer Daniel Paz confirmed that Ms. Spicer had been shot in the hand, with a bullet still lodged inside. After removing several layers of clothing, he also saw that she had "a large amount of . . . deep-colored bruising on her left shoulder[,] but no penetrating trauma." *Id*. at 160-61. Officer Paz then inspected the victim's thick winter coat and "noticed there was a hole in the left shoulder . . . [with] a bullet still inside." *Id*. at 161. Officer Michael Hine examined the vehicle. He observed that there were "two [bullet] holes in the door on the driver's side and two holes in the window just above the driver's door." *Id*. at 167.

In the meantime, Sergeant Noah Pottinger and Officer Patrick Gartrell were dispatched to Appellant's house. They had a general description of Appellant but were unaware that his father was also inside the home. The two officers, along with several others, approached with shields and other protective gear. They knocked and announced themselves and heard a male respond. When Appellant's father opened the door, he was forced to the

ground, and officers quickly realized that they had tackled a man that was not Appellant. Officer Gartrell then looked up to see Appellant sitting on a bed in an adjacent room, pointing a firearm at him. He announced that Appellant had a gun, and the officers drew their weapons and ordered Appellant to put his firearm down. Instead, Appellant "rolled off the bed and [laid] down . . . on the far side[,]" out of sight. *Id*. at 225. The officers were concerned that Appellant "could have at any point shot under the bed, shot through the bed, or shot over the bed at [them]." *Id*. at 226. Twenty to thirty seconds later, Appellant stood with his empty hands up and surrendered. Sergeant Pottinger and Officer Gartrell wore body cameras that day, which captured some of this encounter.

After Appellant was taken into custody, Officer Stephen Lebo interviewed him. Appellant admitted to shooting at the victim three to four times when she was sitting in the front seat of her car, but indicated that he only wanted to frighten her. He further explained that after he shot at Ms. Spicer, he returned to his room and laid in bed with the gun to his head. Shortly thereafter, officers showed up at his door, and he "assumed it was the police based on what had just . . . happened in the driveway." *Id*. at 309. He claimed that he immediately complied with the officers' orders to put down his firearm, and denied that he pointed it at them.

Detective Isaiah Emenheiser conducted a further investigation of the bullet holes on the driver-side door of Ms. Spicer's vehicle, which confirmed

that "someone definitely fired into the vehicle from the outside . . . four times." *Id*. at 177. He observed that "the two bullets that struck just below the door handle did not come through to the inside of the door panel[,]" but "the two rounds that went through the glass went all of the way through to the interior of the car." *Id*. at 178. He also noted spatters, smears, and pools of blood on the steering wheel, gear shift, and center console. Detective Emenheiser then found a bullet fragment inside the passenger-side sun visor and concluded that "from the trajectory of that round and how it was embedded in the sun visor, it was obvious that it came from the driver's side." *Id*. at 183.

Based on the aforementioned events, Appellant was charged with one count each of attempted murder, propelling a missile into an occupied vehicle, recklessly endangering another person, and simple assault, as well as three counts of aggravated assault. The matter proceeded to a jury trial wherein the victim and several officers outlined the above facts. The Commonwealth presented Corporal Joseph Horton of the Pennsylvania State Police as an expert in firearms and tool mark examination. He confirmed that the bullet fragments found over the course of the investigation were discharged from Appellant's gun. The jury was able to view the photographs of the damage to

Ms. Spicer's car and the officers' body camera footage.[1] The victim testified that she had surgery to remove the bullet that was stuck inside her right hand. After this procedure, she had to attend physical therapy for several weeks, and as of the date of trial, she could not shut her hand all of the way and continued to feel pain.

The jury convicted Appellant of all charges, and the court sentenced him as indicated above. This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925. Appellant presents the following questions for our determination:

> I. Was there insufficient evidence to support the guilty verdict for criminal attempt homicide because there was no evidence that [Appellant] had the requisite intent to kill [Ms.] Spicer?
>
> II. Was there insufficient evidence to support the guilty verdict[s] for aggravated assault because there was no evidence that [Appellant] had the requisite intent to (1) cause serious bodily injury to [Ms.] Spicer or (2) cause bodily injury to [Ms.] Spicer with a deadly weapon?
>
> III. Was there insufficient evidence to support the guilty verdict for aggravated assault because there was no evidence that [Appellant] had the requisite intent to use physical menace to put officers in fear of imminent serious bodily injury?

Appellant's brief at 4 (unnecessary capitalization omitted).

_____

[1] Although these videos were presented to the jury, Appellant failed to include them in the certified record. **_See Commonwealth v. Bongiorno_**, 905 A.2d 998, 1000 (Pa.Super. 2006) (_en banc_) ("Our law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty."). Nonetheless, this Court obtained and reviewed this evidence.

All of Appellant's claims implicate the sufficiency of the evidence, which we review "*de novo* and our scope of review is plenary." ***Commonwealth v. Jenkins***, 328 A.3d 1076, 1082 (Pa.Super. 2024). We also consider Appellant's arguments mindful of the following legal principles:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

***Id***. (cleaned up).

Appellant first challenges his conviction for attempted homicide. "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901(a). Attempted homicide is attempted first-degree murder, which requires a "specific intent to kill." ***Commonwealth v. Predmore***, 199 A.3d 925, 929 n.1 (Pa.Super. 2018). Thus, "for the Commonwealth to prevail in a conviction of criminal attempt to commit homicide, it must prove beyond a reasonable doubt that the accused[,] with a specific intent to kill[,] took a substantial step towards that goal."

- 6 -

*Commonwealth v. Sheets*, 302 A.3d 145, 151 (Pa.Super. 2023) (cleaned up).

The requisite *mens rea* may be established through circumstantial evidence, and "the fact finder [may] infer that one intends the natural and probable consequences of his acts." *Commonwealth v. Cannavo*, 199 A.3d 1282, 1292 (Pa.Super. 2018). For instance, "the use of a deadly weapon directed at a vital organ of another human being justifies a factual presumption that the actor intended death unless the testimony contains additional evidence that would demonstrate a contrary intent." *Predmore*, 199 A.3d at 931 (cleaned up). Additionally, "firing of a bullet in the general area in which vital organs are located can in and of itself be sufficient to prove specific intent to kill beyond a reasonable doubt." *Id*. at 933 (emphasis omitted).

Appellant argues that the Commonwealth did not prove that he had a specific intent to kill the victim based on the statement he relayed to Officer Lebo that he only meant "to scare the hell out of" her. *See* Appellant's brief at 16. He indicates that the jury could not presume an intent to kill where he "fired four shots at fairly close range where [Ms. Spicer] was seated in a vehicle, yet shots missed any area near a vital portion of her body." *Id*. at 17. Appellant claims that only the victim's hand was injured, and there was no other evidence indicating that he intended to kill her where he did not verbally threaten or scream at her. *Id*. at 15-16.

Upon review, we conclude that the evidence was sufficient to sustain Appellant's conviction for attempted homicide. Appellant aimed at the victim's driver-side door where she was seated and fired his weapon four times, with two rounds landing just under the handle and two others going through the window, ultimately striking her shoulder and perforating her hand. Although Appellant did not successfully penetrate a vital part of her body, that does not negate the presumption that Appellant intended to kill Ms. Spicer where he shot in the general vicinity of her vital organs. *See Predmore*, 199 A.3d at 933 (summarizing cases where evidence was sufficient to establish an intent to kill where a defendant shot a store clerk in the shoulder, which is "in the general area in which vital organs are located[,]" and where a defendant fired into an occupied vehicle and a "bullet had penetrated the outer panel of the automobile door at a height near the stomach of the victim"). Ms. Spicer further testified that Appellant was "hounding" her that morning, accusing her of hacking his computer and accordingly providing an impetus for the shooting. *See* N.T. Trial, 3/4-7/24, at 110. The jury thus had sufficient evidence to conclude that Appellant intended to murder the victim. This argument affords no relief.

Appellant next challenges the sufficiency of the evidence for two of his aggravated assault convictions stemming from his actions against Ms. Spicer. As to the first, a person commits aggravated assault when he "attempts to cause serious bodily injury to another, or causes such injury intentionally,

knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S. § 2702(a)(1). Serious bodily injury is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301.

Where a victim has established that she sustained serious bodily injury, "the Commonwealth can, but does not necessarily have to, establish specific intent to cause such harm." *Commonwealth v. Williamson*, 330 A.3d 407, 417 (Pa.Super. 2025). Rather, "the Commonwealth need only prove the defendant acted recklessly under circumstances manifesting an extreme indifference to the value of human life." *Id*. To satisfy this degree of recklessness, "the offensive act must be performed under circumstances which almost assure that injury or death will ensue." *Id*. (cleaned up).

Relating to the second conviction, a defendant may also be guilty of aggravated assault where he "attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon." 18 Pa.C.S. § 2702(a)(4). Bodily injury is defined as "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S. § 2301. A deadly weapon includes "[a]ny firearm, whether loaded or unloaded[.]" *Id*.

Appellant argues that because he was not "fighting with [the victim] or threatening her" before he fired his gun, he could not have had the intent to cause Ms. Spicer either serious bodily injury or bodily injury with a deadly

weapon. *See* Appellant's brief at 20. He claims that "he was overwhelmed, tired, and just trying to scare the hell out of [her]." *Id*. Appellant further contends that there was "no [other] direct evidence" of his intent. *Id*.

The evidence was sufficient to sustain both of Appellant's convictions for aggravated assault against Ms. Spicer. First, the victim established that she suffered serious bodily injury where she had to have surgery to remove a bullet lodged inside her hand, and as of the date of trial, she suffered "protracted loss or impairment of the function of" it and continued to experience pain. 18 Pa.C.S. § 2301; *see also Williamson*, 330 A.3d at 418-19 (holding that sufficient evidence supported a finding that the victim suffered serious bodily injury where the defendant stabbed her in the neck, bicep, and hand where some areas contained vital blood vessels, and she lost use of and feeling in a finger). The Commonwealth further demonstrated that Appellant took action that would assure that injury or death would ensue where he intentionally pointed and shot his firearm multiple times at Ms. Spicer's driver-side door where she was sitting. *See id*. at 417.

As to the remaining aggravated assault conviction directed to Ms. Spicer, the Commonwealth proved that Appellant caused her bodily injury using a deadly weapon where he pointed and shot a loaded gun at her four times, resulting in severe bruising and pain from the bullet that nearly struck her. *See* N.T. Trial, 3/4-7/24, at 160-61; *see also Commonwealth v. Wroten*, 257 A.3d 734, 744 (Pa.Super. 2021) (holding that an appellant

caused bodily injury to a victim where he pushed her against a wall and caused bruising); *Commonwealth v. Bailey*, 245 A.3d 1075, 2020 WL 7386196, at *4 (Pa.Super. 2020) (non-precedential decision) (affirming a conviction for aggravated assault where the defendant shot at the victim as she was entering her vehicle). Ms. Spicer's coat was the only barrier that prevented the projectile from penetrating her shoulder. Accordingly, no relief is due.

Appellant lastly avers that the evidence was insufficient to sustain his conviction for aggravated assault against the officers who responded to his home. A defendant is guilty of aggravated assault where he "attempts by physical menace to put any [police officer], while in the performance of duty, in fear of imminent serious bodily injury." 18 Pa.C.S. § 2702(a)(6), (c)(1). This Court has found sufficient evidence to support a conviction for aggravated assault where the defendant pointed a firearm at a uniformed police officer and refused an instruction to drop the weapon. *See Commonwealth v. Sheppard*, 837 A.2d 555, 558 (Pa.Super. 2003).

Appellant claims his actions demonstrate that he was cooperative with officers considering their "chaotic" entry into his home. *See* Appellant's brief at 23. He points out that since it was early in the morning, his house was dark, and his gun did not have a light attached to it. *Id*. at 22-23. Appellant maintains that officers were also in protective gear, he did not threaten them, and he "quickly" complied with their commands to put his gun down and surrender himself "once he understood the situation." *Id*. at 23. Therefore,

he declares that the jury could not have inferred that he intended to put the officers in fear of imminent serious bodily injury. *Id*.

The record supports Appellant's conviction for aggravated assault against the officers. His assertion that he immediately complied with commands to put his weapon down is belied by the officers' testimony. As they explained, Appellant pointed his firearm at them upon their entry into his house. They had knocked and announced themselves and were in uniform. Appellant also told Officer Lebo that he assumed the police were at his home. Rather than placing his gun down when ordered to do so, Appellant rolled off the side of his bed, concerning the officers that he could shoot at them while he was out of sight. *See* N.T. Trial, 3/4-7/24, at 225-26. Only twenty to thirty seconds later did Appellant stand up and surrender. *Id*. at 230. Thus, the evidence was sufficient for the jury to find Appellant guilty of aggravated assault against the officers. *See Sheppard*, 837 A.2d at 558.

Overall, Appellant has not demonstrated that the evidence was insufficient to sustain his convictions. Accordingly, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 05/13/2025