J-A13001-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.A.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.A.W., A MINOR | : | |
| | : | |
| | : | No. 973 MDA 2022 |

Appeal from the Order Entered June 2, 2022
In the Court of Common Pleas of Dauphin County Juvenile Division at
No(s):  CP-22-JV-0000375-2020

BEFORE:   BOWES, J., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BOWES, J.:                    **FILED: NOVEMBER 14, 2023**

K.A.W., a minor, appeals from the dispositional order providing for his discharge after completing fingerprint and photograph requirements and the paying of court costs, following his delinquency adjudication for indecent assault.[1]  We vacate the dispositional order and reverse the adjudication of delinquency.

The certified record reveals the following background information.  E.M., aged six at the time in question, is the half-sister of then-aged-thirteen Appellant.  They also have a number of additional siblings of various ages and relations.  E.M. resided with her father and stepmother, while Appellant

_____

[*] Former Justice specially assigned to the Superior Court.

[1] We note that one judge presided over the fact-finding aspect of Appellant's adjudication, and another judge entered the adjudication of delinquency and the and disposition.

resided with their mother. *See* N.T. Adjudication Hearing, 10/03/2021, at 6-7. On one of E.M.'s regular visits to her mother's home, several of the siblings were in the bedroom that three of the boys shared, where the home's only video game system was located. While they were playing games, fully clothed, Appellant "popped up behind" E.M. from behind and touched her stomach, legs, back, arms, and "pee area" with his hand. *Id*. at 8. *See also* Commonwealth's Exhibit 1 (CRC video). When E.M. informed Appellant that she would tell their mother, Appellant ceased the touching. E.M. nonetheless informed her mother of the incident, which caused Appellant to be put in a time out. *Id*. at 8-9; Commonwealth's Exhibit 1. Appellant did not say anything throughout the course of this incident, and there was no indication that Appellant engaged in other incidents of this nature before or after this occasion. *Id*. at 10; Commonwealth's Exhibit 1.

On August 3, 2020, the Commonwealth filed a juvenile delinquency petition alleging one count of indecent assault. At a subsequent adjudication hearing, E.M. was the sole witness. Based upon E.M.'s testimony and E.M.'s forensic interview about the incident, the juvenile court found that Appellant had committed acts that establish the crime of indecent assault. At a later hearing, Appellant was adjudicated delinquent, but the court determined that his treatment and rehabilitation needs had been met such that no supervision was ordered after he underwent the standard processing.

On July 7, 2022, Appellant timely filed a notice of appeal. Appellant filed a concise statement of matters complained of upon appeal pursuant to Pa.R.A.P. 1925(b) and the juvenile court filed an opinion pursuant to Pa.R.A.P. 1925(a).[2] Appellant raises the following issue for our consideration:

> Did the juvenile court err in finding the Commonwealth to have met its burden of proof beyond a reasonable doubt that [Appellant] committed the offense of indecent assault when the record has no evidence that it was done for the purpose of sexual gratification in either [Appellant] or E.M., thereby defeating the *mens rea* requirement and failing to establish indecent contact?

Appellant's brief at 5 (cleaned up).

We consider Appellant's sufficiency challenge within the following legal parameters:

> When a juvenile is charged with an act that would constitute a crime if committed by an adult, the Commonwealth must establish the elements of the crime by proof beyond a reasonable doubt. When considering a challenge to the sufficiency of the evidence following an adjudication of delinquency, we must review the entire record and view the evidence in the light most favorable to the Commonwealth. In determining whether the Commonwealth presented sufficient evidence to meet its burden of proof, the test to be applied is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing all reasonable inferences therefrom, there is sufficient evidence to find every element of the crime charged. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by wholly circumstantial evidence.
>
> The facts and circumstances established by the Commonwealth need not be absolutely incompatible with a defendant's innocence. Questions of doubt are for the hearing judge, unless the evidence is so weak that, as a matter of law, no probability of fact can be

---

[2] The judge who found that Appellant committed the delinquent acts authored the Pa.R.A.P. 1925(a) opinion.

drawn from the combined circumstances established by the Commonwealth. The finder of fact is free to believe some, all, or none of the evidence presented.

*In Interest of P.S.*, 158 A.3d 643, 650 (Pa. Super. 2017) (cleaned up).

Appellant challenges the sufficiency of the evidence for the charge of indecent assault. The Crimes Code defines that crime as follows in pertinent part:

A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:

(1) the person does so without the complainant's consent[.]

18 Pa.C.S. § 3126(a). Our Supreme Court has highlighted that, in addition to the lack of consent, this crime requires proof of two elements: "first, the touching of a sexual or other intimate part of the person, and, second, such touching being for the purpose of arousing or gratifying sexual desire." *Commonwealth v. Gamby*, 283 A.3d 298, 314 n.17 (Pa. 2022).

Here, Appellant does not contest that the Commonwealth proved that he touched EM.'s sexual or intimate part without her consent. *See* Appellant's brief at 11, 13. Instead, he asserts that the evidence was insufficient to establish that he did so with an intent to arouse sexual desire in either himself or E.M. In this vein, "the manner and circumstances of the touching go to the . . . element of whether the touching was for sexual gratification or desire." *Gamby*, *supra* at 314 n.17. As our High Court expounded:

> Thus, whether a part of the body was kissed, stroked, slapped, or poked . . . speak[s] to whether the touching was for sexual gratification. An example sharpens the point: if someone were to flick a bee off of a woman's breast, he would have touched what is reasonably considered to be an intimate part of her body, but the manner and purpose — a flicking done to prevent the person from being stung — goes to whether the touching was for sexual gratification.

*Id*. at 315.

For instance, we have found the evidence sufficient to support a finding of intent to arouse sexual desire in circumstances where: (1) the defendant grabbed a woman from behind and kissed her on the neck before she ran away and the defendant took off his clothes and pressed his naked body against her car, **Gamby**, **supra** at 301-02; (2) the defendant engaged in a regular pattern of sexual abuse in which he groped the victims' breasts and buttocks and moaned during the touching, **Commonwealth v. Leatherby**, 116 A.3d 73, 81-82 (Pa.Super. 2015); (3) the defendant had the victim straddle his lap and exchanged "passionate kisses," **Commonwealth v. Provenzano**, 50 A.3d 148, 153 (Pa.Super. 2012); and (4) the defendant said "that the victim was sexy and he would like to do some things to her" before wrapping his arms around her and inserting his tongue into her mouth, **Commonwealth v. Evans**, 901 A.2d 528, 533 (Pa.Super. 2006).

In the case *sub judice*, Appellant's argument is that the Commonwealth offered no evidence to support even an inference that his touching of E.M. was done for anyone's sexual arousal. He contends that proof of a single touch of E.M.'s fully-clothed crotch area, absent any proof of context or circumstances,

- 5 -

was insufficient to justify the finding that the action was done with the requisite *mens rea* to constitute the offense. **See** Appellant's brief at 9.

The juvenile court in its opinion, and the Commonwealth in its initial brief, offered no direct counter to Appellant's argument. Instead, they merely cited E.M.'s testimony that Appellant grabbed the area of her genitals and deemed that sufficient evidence to support his adjudication. **See** Juvenile Court Opinion, 9/6/22, at unnumbered 3-4; Commonwealth's brief at 5.

The Commonwealth filed a supplemental brief after this Court asked at oral argument for case law supporting the contention that the fact that the touching of E.M.'s genital area in and of itself permitted the inference that the purpose was sexual arousal. Therein, the Commonwealth reiterated its position that "[g]rabbing another's genitals does not occur in the absence of intent to arousing [*sic*] sexual desire in the person or the complainant." Commonwealth's supplemental brief at 2. It further asserted that "the evidence sufficiently eliminated any other responsible cause[.]" **Id**. Citing **Evans**, **supra**, the Commonwealth maintained that the evidence before the juvenile court sustained "the inference that [A]ppellant intended to arouse sexual desire."[3] **Id**. The only authority that the Commonwealth proffered for

_____

[3] Specifically, the Commonwealth stated that the Court in **Commonwealth v. Evans**, 901 A.2d 528, 533 (Pa.Super. 2006), held that "touching of an intimate part of another person 'does not occur outside of the of context of a sexual or intimate situation.'" Commonwealth's supplemental brief at 2. That is not a fair representation of **Evans**'s holding. More fully, what we said there
*(Footnote Continued Next Page)*

the proposition that genital touching itself is indicative of an intent to arouse sexual desire was a 1974 decision by our Supreme Court in a civil case discussing § 328D of the Restatement (Second) of Torts regarding application of the doctrine of *res ipsa loquitur* to satisfy the causation element in negligence cases. *Id*. at 1-2 (citing ***Gilbert v. Korvette, Inc.***, 327 A.2d 94, 100 (Pa. 1974)).

Appellant's reply argues that the Commonwealth's position sweeps too broadly and ignores the guidance from our Supreme Court in ***Gamby***, ***supra***. *See* Appellant's reply brief at 2-4. Citing ***In Interest of J.L.***, 475 A.2d 156, 157 (Pa.Super. 1984), Appellant observes that an act does not constitute a crime unless done with criminal intent. ***See*** Appellant's reply brief at 5. He maintains that the Commonwealth offered no evidence to prove beyond a reasonable doubt that Appellant had a sexual intent when he touched his sister such that it is mere speculation to infer that intent "as opposed to sibling-on-sibling harassment." ***Id***.

Upon careful review of the evidence, viewed in the light most favorable to the Commonwealth, we are constrained to agree with Appellant that proof of his intent was insufficient. Certainly, the Commonwealth is correct that,

---

was: "[T]he act of wrapping one's arms around another person and inserting one's tongue into another's mouth clearly involves the touching of an intimate part of that person. We agree with the Commonwealth that such an act does not occur outside of the context of a sexual or intimate situation." ***Evans***, ***supra*** at 533. Hence, ***Evans*** relied on precisely the type of evidence of the manner and circumstances of touching that Appellant alleges is absent herein.

"[l]ike other elements of a crime, intent can generally be inferred from the surrounding circumstances." *In re A.C.*, 763 A.2d 889, 891 (Pa.Super. 2000). For example, in the context of a homicide prosecution, "it is axiomatic that specific intent to kill may be inferred from the use of a deadly weapon on a vital part of the victim's body." *Commonwealth v. Predmore*, 199 A.3d 925, 931 (Pa.Super. 2018) (*en banc*) (cleaned up). However, it does not follow that the fact of contact being directed at a person's genitals *ipso facto* gives rise to an inference that there was a sexual intent.

The Commonwealth's proposed *res ipsa* rule is plainly at odds with the above-cited discussion in *Gamby* about the manner and circumstances of contact with an intimate body part being critical to the assessment of intent. Furthermore, it ignores the reality of intra-family dynamics. For example, in *Interest of J.L.*, *supra*, the sixteen-year-old juvenile was alleged to have committed the delinquent act of simple assault when she elbowed her two-year-old nephew who was sitting next to her on the couch. On appeal, we held that the mere act of pushing was insufficient to allow an inference of intent to inflict bodily injury on the young child. *Id*. at 158. In so doing, we observed:

> Within the confines of the family, it is difficult to attach criminality to the pushing, shoving, slapping, elbowing, hair-pulling, perhaps even punching and kicking, that not infrequently occur between siblings or other members of the same family. Altercations between juvenile members of the same family, even when they become less than civil, are usually too trivial to be a target of the Crimes Code. In the absence of a criminal or

malicious intent, such intra-family spats will not support criminal prosecution.  . . .

The Commonwealth argues that a criminal intent can be inferred from the fact that [the juvenile's] act was committed during a time of anger.  That appellant acted in anger is probably true.  Most intra-family altercations do involve momentary anger.  Anger, however, cannot alone translate into an intent to commit bodily injury or substantial pain upon [the juvenile's] two year old nephew.  Although [her] act may have been inconsiderate, the intent necessary to sustain a conviction for assault was not proved and cannot reasonably be inferred from [her] use of her elbow to push a young nephew forcefully from her while she was eating candy.

*Id*. at 157–58.

We find this reasoning to be more pertinent to the instant case than the logic behind the inference of intent to kill discussed in **Predmore**, **supra**.  In that latter type of cases the manner and circumstances of the defendant's action are included within the applicable rule itself:  the defendant used a deadly weapon on a vital part of the body, logically suggesting that the defendant sought to inflict a moral wound.  Otherwise, the defendant would have employed a different method or circumstances, such as using a non-lethal weapon or targeting a non-vital part of the body.  It is not that intent is divined from the mere use of any kind of weapon on any part of the victim, but that the particular manner and circumstances of the use that suggest an intent to kill.

The fact of contact with an intimate body part, without more, simply does not itself include the same level of contextual clues, even when it is genitals that were touched.  An inference of a sexual intent unquestionably

could be inferred by certain methods of such touching, such as stroking, massaging, or fondling, and in certain circumstances, such as when one or both of the parties is nude, sexually suggestive comments are made, or there was a history of sexual contact or abuse between the parties. However, the Commonwealth proffered no evidence of any such context in this case.

Rather, the evidence established that six-year-old E.M. was in the bedroom of her siblings while they were playing games, all fully clothed. E.M. related that her thirteen-year-old brother, Appellant, "popped up" and used one hand to touch E.M. on her stomach, back, legs, arms, and "pocketbook," *i.e.*, the area of her body that she wipes when she goes to the bathroom. When asked how long Appellant touched her pocketbook, E.M. answered: "He only just touched it. And once I said I was gonna tell, he stopped." N.T. Hearing, 10/13/21, at 8. E.M. indicated that Appellant said nothing at all when this happened.

Thus, we have very little information about the circumstances of the contact, just that it was done in a bedroom with multiple siblings playing a game. There is no indication what type of game they were playing, what the other siblings were doing, or whether anyone was talking about anything. We have a similar paucity of evidence of the method of touching. We know that it was done with one hand, over E.W.'s clothing, while Appellant's other hand was on her leg, for the duration of time it took for E.M. to threaten to tell, and that she was itchy afterwards. The manner of contact also was not identified

in any way, let alone described as rubbing or tickling or any type of sensual contact. E.M. further expressed that Appellant never touched her that way on any other occasion, presenting no pattern of past abuse to inform the inference. *Cf*. *Leatherby*, *supra* at 81-82.

Therefore, we must conclude there is simply no evidence of context in this case to allow an inference, beyond a reasonable doubt, that Appellant acted with any particular intent. "The difference between an inference and a speculation is that an inference is a reasoned deduction from the evidence, a speculation is a guess." *Commonwealth v. Johnson*, 67 WDA 2022, 2023 WL 3848375, at *8 (Pa.Super. June 6, 2023) (non-precedential decision) (cleaned up). Even viewing the evidence of the circumstances in the light most favorable to the Commonwealth, it is just as plausible that the touching was undertaken with the intent to annoy or harass E.M., as Appellant suggests in his brief, as it is that Appellant acted to sexually arouse himself or E.M., as the Commonwealth contends. Consequently, the adjudication was based upon improper speculation rather than sufficient evidence and it must be reversed.

Dispositional order vacated. Adjudication of delinquency reversed.

Judge Lazarus joins this Memorandum.

P.J.E. Stevens files a Dissenting Statement.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>11/14/2023</u>