J-S12042-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| THEODORE B. DIXON | : | |
| | : | |
| Appellant | : | No. 1202 EDA 2023 |

Appeal from the Judgment of Sentence Entered April 15, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at CP-51-CR-0001421-2020

BEFORE:    DUBOW, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                **FILED MAY 9, 2024**

Theodore B. Dixon (Appellant) appeals *nunc pro tunc* from the judgment of sentence imposed after a jury convicted him, at the above docket, of the attempted murder, conspiracy to commit murder, and robbery of Bruce Hall (Mr. Hall).[1]  Upon review, we affirm in part and vacate in part.

The jury also convicted Appellant, at docket CP-51-CR-0001420-2020, of the second-degree murder, conspiracy to commit murder, and robbery of Tianna Valentine-Eatman (Ms. Valentine-Eatman).  This Court has affirmed Appellant's judgment of sentence for the convictions related to Ms. Valentine-Eatman.  ***Commonwealth v. Dixon***, 276 A.3d 794 (Pa. Super. 2022).[2]

_____

[1] 18 Pa.C.S. §§ 901(a), 903(c), and 3701(a)(1), respectively.

[2] Appellant filed appeals at both dockets.  However, this Court dismissed the appeal related to Mr. Hall for failure to file a brief.  ***See*** Order, 10/1/21 (1074
*(Footnote Continued Next Page)*

We explained:

On June 30, 2019, at approximately 2:30 a.m., [Ms.] Valentine-Eatman, [Mr.] Hall, Diamond Ward ([Ms.] Valentine-Eatman's sister), Michael Hall ([Mr.] Hall's brother), and Phillip Drumgoole ([Mr.] Hall's friend), left the Pic[c]adilly Club on 30th Street in Philadelphia, and walked to their cars, which were parked nearby on Clearfield Street. While the group was standing by their cars, Ward observed a Mercury Grand Marquis pass by multiple times. The car eventually stopped in front of the group. A man stepped out of the car with a gun, pointed the gun at [Mr.] Hall, and shot [Mr.] Hall in the neck. Immediately after, another individual exited the car and began shooting. The driver never exited the car. [Ms.] Valentine-Eatman was shot in the head, and likely died almost instantly. [Mr.] Hall suffered additional shots to the back and arm and ran away from the scene into a nearby alleyway. The shooters then got back into their car and drove away. Drumgoole eventually found [Mr.] Hall and drove him to the hospital, where he made a full recovery.

*Id.* at 797.

The Commonwealth charged Appellant with the above crimes. Appellant's trial convened on April 12, 2021, and the jury rendered its verdicts on April 15, 2021. The trial court "immediately imposed the mandatory sentence of life in prison for the second-degree murder of Ms. Valentine-Eatman, along with a concurrent sentence of 20 to 40 years for the attempted murder of Mr. Hall." Trial Court Opinion (TCO), 7/26/21, at 1. The court

_____

EDA 2021). On October 31, 2021, Appellant filed a *pro se* petition pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-46. There was no docket activity until November 3, 2022, when a docket entry states, "PCRA Mail Received." The PCRA court subsequently appointed counsel, who filed a successful amended petition for reinstatement of Appellant's appellate rights. *See* PCRA Order, 5/12/23 (single page). Appellant filed this timely appeal on May 15, 2023.

- 2 -

sentenced Appellant "to no further penalty on all of the remaining charges."
*Id.* (footnote omitted).

Appellant filed timely post-sentence motions challenging the weight of the evidence at both dockets. The trial court denied relief. *See* Order, 4/30/21 (single page). Appellant then filed timely notices of appeal at each docket. As noted above, this Court dismissed Appellant's appeal from his judgment of sentence for the crimes against Mr. Hall, and the PCRA court reinstated his appeal rights. Appellant filed a timely notice of appeal followed by a court-ordered concise statement pursuant to Pa.R.A.P. 1925(b).

Appellant presents two questions for review:

I. WHETHER THE VERDICTS WERE AGAINST THE WEIGHT OF THE EVIDENCE?

II. WHETHER THE SENTENCE FOR CONSPIRACY TO MURDER [MR.] HALL WAS IMPROPER?

Appellant's Brief at 7.

In his first issue, Appellant challenges the weight of the evidence. Appellant argues:

The verdict was against the weight of the evidence because the prosecution's case was built on unreliable witnesses. This fact, coupled with the lack of physical evidence connected to Appellant[,] calls into doubt the weight of the evidence presented by the Commonwealth, such that it shocks th[e] conscience and undermines the efficacy of the tribunal.

*Id.* at 13.

Appellant's claim "concedes that sufficient evidence exists to sustain the verdict[,] but questions which evidence is to be believed." *Commonwealth v. Thompson*, 106 A.3d 742, 758 (Pa. Super. 2014). We have explained:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witness. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the [] verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Dixon*, 276 A.3d at 802 (citation omitted).

"Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence." *Commonwealth v. Talbert*, 129 A.3d 536, 546 (Pa. Super. 2015) (citation omitted). "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence." *Id.*

Appellant challenges the weight of the evidence without identifying or discussing his three convictions. *See* Appellant's Brief at 13-16; *see also* Appellant's Post-Sentence Motion, 4/26/21, at 1-4. Pertinently, a "conviction for attempted murder requires the Commonwealth to prove beyond a

reasonable doubt that the defendant had the specific intent to kill and took a substantial step towards that goal." *Commonwealth v. Predmore*, 199 A.3d 925, 929 (Pa. Super. 2018) (*en banc*) (citation omitted). To prove conspiracy, the Commonwealth must show that the defendant, "with another person or persons … (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime." 18 Pa.C.S. § 903(a). "[T]he defendant's intent[,] as well as the agreement[,] is almost always proven through circumstantial evidence, such as by 'the relations, conduct or circumstances of the parties or overt acts on the part of the co-conspirators.'" *Commonwealth v. Murphy*, 844 A.2d 1228, 1238 (Pa. 2004) (citation omitted). Finally, "[a] person is guilty of robbery if, in the course of committing a theft, he: (i) inflicts serious bodily injury upon another." 18 Pa.C.S. § 3701(a)(1). "An act shall be deemed 'in the course of committing a theft' if it occurs in an attempt to commit theft or in flight after the attempt or commission." 18 Pa.C.S. § 3701(a)(2).

Appellant appears to challenge all three of his convictions. According to Appellant, he "was never seen with the gun, there were no fingerprints or DNA evidence found that tied him to the crime, the vehicle driven by the shooters was not connected to a specific owner, Appellant was not arrested at the scene[,] and no witnesses identified him as being at the scene at the time of

the crime." Appellant's Brief at 14. Appellant stresses the unreliability of the witnesses and lack of physical evidence in claiming the verdict "shocks th[e] conscience and undermines the efficacy of the tribunal." *Id.* at 16. We disagree.

Appellant made a similar argument in his appeal related to the crimes committed against Ms. Valentine-Eatman. In challenging the weight of the evidence,

> [Appellant] claim[ed] he was never seen with the murder weapon, there was no fingerprint or DNA evidence tying him to the crimes charged, the vehicle driven by the shooters at the scene of the crime was not connected to a specific owner, he was not arrested at the scene of the crime, and there were no witnesses that could identify him at the scene of the crime.

*Dixon*, 276 A.3d at 802.

We concluded the trial court did not abuse its discretion in rejecting Appellant's weight claim. *Id.* at 803. We reach the same conclusion in this case. Notably, Appellant did not present any evidence at trial. *See* TCO at 2. The Commonwealth presented testimony from many witnesses, including members of the friend group: Mr. Hall, Diamond Ward, Phillip Drumgoole, Michael Hall, and Tamika Valentine. The Commonwealth also presented testimony from Philadelphia police officers Michelle Horner and Christopher Campbell; Philadelphia police sergeant Anthony Mirabella; and Philadelphia police detectives James Dunlap and Kevin Bradley. *Id.*

Although Mr. Hall eventually recovered, he was shot multiple times and seriously injured. ***See id.*** at 11-12 (trial court recounting Mr. Hall's testimony about being shot in his neck, spine, and shoulder). As this Court summarized:

> After [Ms.] Valentine-Eatman and [Mr.] Hall were shot by the two individuals riding in a Mercury Grand Marquis, [Ms.] Valentine-Eatman's passport, cash, business phone, and personal phone were found missing from the scene of the crime. N.T. Trial, 4/13/21, at 85-86, 94-95. Her personal phone was found in possession of [Shaquille] Sistrunk. ***Id.***, 4/14/21, at 77-78. After the shooting, [Ms.] Valentine-Eatman's business phone was used to make a call to a phone number registered to [Appellant's] grandmother. ***Id.*** at 71-73, 85. That phone number also connected with a cell phone tower about three-tenths of a mile from the scene only twenty minutes before the shooting occurred. ***Id.*** at 39-40, 85.
>
> Additionally, after [Ms.] Valentine-Eatman's death, $700.00 from [her] bank account was transferred to a CashApp account with an "identity verification name" of [Appellant]. N.T. Trial, 4/13/21, at 260-61, 267; N.T. Trial, 4/14/21, at 82-84, 92, 99-100. The CashApp account was also linked to the phone number associated with [Appellant's grandmother,] and the email account bashirdixon@gmail.com. ***Id.*** at 82-8[5]. Bashir is [Appellant's] middle name. N.T. Trial, 4/13/21, at 269-71. Upon questioning by police, [Appellant] could not explain how [Ms.] Valentine-Eatman could have transferred $700.00 from her bank account to his CashApp account after her death. ***See*** Commonwealth Exhibit C-87 (video statement of [Appellant]).
>
> Finally, the shooters were driving a Mercury Grand Marquis back and forth before the shooting, as evidenced by street security footage. N.T. Trial, 4/14/21, at 67. The police discovered that [Mr.] Sistrunk, the man found in possession of [Ms.] Valentine-Eatman's personal phone after the shooting, owned a Mercury Grand Marquis. ***Id.*** at 73-77.
>
> [Mr.] Sistrunk had transferred to [Appellant] the ownership of this vehicle, which was registered to [Appellant] two days before the shooting. ***Id.***

***Dixon***, 276 A.3d at 801.

Appellant disregards that the jury was "free to believe all, part, or none of the evidence and to determine the credibility" of the witnesses. *Id.* at 802. Here, the trial court rejected Appellant's weight claim because "the Commonwealth presented compelling evidence" to support the jury's verdicts. TCO at 14. As the trial court did not abuse its discretion, Appellant's first issue lacks merit.

In his second issue, Appellant argues the trial court illegally sentenced him "for conspiracy to murder [Mr.] Hall as well as for the attempted murder of Mr. Hall." Appellant's Brief at 17 (citing 18 Pa.C.S. § 906). Like the Commonwealth and trial court, we agree we must vacate the sentence for conspiracy. *See* Commonwealth's Brief at 12-13; TCO at 1 n.2 (stating that "the entry of judgment … for no further penalty, while it did not affect the aggregate sentence, was not proper"). Although the trial court imposed "no further penalty" for conspiracy, this Court recently confirmed that a sentence of "no further penalty" constitutes a sentence. *Commonwealth v. Westlake*, 295 A.3d 1281, 1289 (Pa. Super. 2023) (vacating sentence of no further penalty where convictions should have merged).

Section 906 provides that a person "may not be convicted of more than one of the inchoate crimes of criminal attempt, criminal solicitation or criminal conspiracy for conduct designed to commit or to culminate in the commission of the same crime." 18 Pa.C.S. § 906. In addition, the Pennsylvania Supreme Court has held that Section 906 prohibits the imposition of sentences for both attempted murder and conspiracy to commit murder. *Commonwealth v.*

*King*, 234 A.3d 549, 572 (Pa. 2020) (stating "where a defendant tries to achieve a result—in this case, murder—but fails to do so, he may only be punished once in the absence of distinct criminal objectives").[3]

This Court "may affirm, modify, vacate, set aside or reverse any order brought … for review, and may remand … and direct the entry of such appropriate order, or require such further proceedings … under the circumstances." 42 Pa.C.S. § 706. Accordingly, we vacate Appellant's sentence of no further penalty for conspiracy. As our disposition does not upset the sentencing scheme, we decline to remand. *Commonwealth v. Thur*, 906 A.2d 552, 569 (Pa. Super. 2006) (stating "if our decision does not alter the overall scheme, there is no need for remand").

Judgment of sentence vacated as to conspiracy only; judgment of sentence affirmed in all other respects. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/09/2024

---

[3] The Supreme Court noted that the term "convicted" in Section 906, "refers to the entry of a judgment of sentence, not a finding of guilt by the jury." *King*, 234 A.3d at 569 n.17.

- 9 -