J-S06024-23

2024 PA Super 127

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ISAIAH SCOTT NEWTON | : | No. 1283 MDA 2022 |

Appeal from the Order Entered August 22, 2022
In the Court of Common Pleas of Columbia County
Criminal Division at No: CP-19-CR-0000310-2022

BEFORE: STABILE, J., NICHOLS, J., and STEVENS, P.J.E.*

OPINION BY STABILE, J.: **FILED: JUNE 17, 2024**

The Commonwealth appeals from an order granting, in part, the *habeas corpus* motion of Appellee, Isaiah Scott Newton, and dismissing the charge of first-degree murder on the ground that the Commonwealth failed to present *prima facie* evidence of Appellee's specific intent. The evidence adduced during the *habeas corpus* hearing demonstrates that following an altercation on the street, Appellee entered a nearby residence, retrieved a large kitchen knife, returned to the street, and stabbed the victim so deeply in his left arm that his brachial artery and vein were completely severed, resulting in the victim's death. Accepted as true, the totality of this evidence constitutes *prima facie* evidence of Appellee's specific intent to kill the victim and entitles the Commonwealth to proceed to prosecute Appellee for first-degree murder. Accordingly, we reverse the portion of the order dismissing the first-degree murder charge and remand for further proceedings.

---

* Former Justice specially assigned to the Superior Court.

On February 12, 2022, Appellee was arrested and charged with homicide, aggravated assault, and tampering with physical evidence. Following a preliminary hearing on April 12, 2022, Appellee was held for court on all charges.

On May 19, 2022, the Commonwealth filed a criminal information. Count 1 of the information charged Appellee with an open count of homicide, that is, a count including first-degree murder, second-degree murder, third-degree murder, voluntary manslaughter and involuntary manslaughter. On June 22, 2022, Appellee filed a *habeas corpus* motion seeking dismissal of Count 1 of the information.[1]

On August 22, 2022, the court convened an evidentiary hearing on Appellee's *habeas corpus* motion. The evidence demonstrated that at approximately 11:26 p.m. on Friday, February 11, 2022, Berwick Borough police officers were dispatched to 1542 Fairview Avenue for a report of potential shots fired. N.T., 8/22/22, at 5-6. Upon their arrival, they discovered a large amount of blood at the intersection of Eaton Street and an unnamed alley, with a fresh blood trail leading behind the rear of 1542 Fairview Avenue. *Id.* at 7. Patrol officers removed six occupants from the house at this address, including Appellee. *Id.* at 10-11. None of these individuals had any apparent injuries. *Id.* at 19. As the officers attempted to identify the source of the blood, they received notice that an injured male had

---

[1] Appellee did not move to dismiss the charges of aggravated assault or tampering with physical evidence.

arrived in an emergency room at a nearby hospital. *Id.* at 12. The victim, Frederick James McConnell, died despite attempts to save him. *Id.* at 40.

An autopsy determined that the cause of death was a stab wound to the victim's left bicep that "completely severed" the brachial artery and vein, causing blood loss, and that the manner of death was homicide. *Id.* at 27-29. The brachial artery is a major artery that is part of the circulatory system, which is necessary for life. *Id.* at 37.

Detective Greg Martin responded directly to the hospital and observed the deceased victim as well as Jamal Butler, who had driven the victim to the hospital. *Id.* at 47. Detective Martin observed large amounts of blood inside and around the outside of the vehicle. *Id.* at 48. Butler stated that the victim was unable to drive himself to the hospital, and that he, Butler, helped the victim from the driver's side of the car to the passenger's side and drove the victim to the hospital. *Id.* at 54.

Appellee received ***Miranda*** warnings at the police station and consented to a recorded interview by Detectives Martin and Rafferty. *Id.* at 50. Appellee stated that there had been an altercation outside; he did not state what the altercation was about. *Id.* Appellee admitted that after the altercation, he went inside the house, retrieved a knife from the kitchen, returned outside, and stabbed the victim one time. *Id.* He said that the knife had a red handle and that he placed it in the kitchen sink after the stabbing. *Id.* at 51-52. The police found a knife fitting this description in the sink. *Id.* There were no visible signs of blood on the knife, and its tip appeared to be broken off. The

tip was not located, *id.* at 52, and the knife later tested positive for the presence of blood.

Detective Martin testified that upon subsequent inspection of the vehicle at a secured location, he observed a puncture on the metal roof above the driver's door consistent with the knife blade. *Id.* at 55-58; *see id.* at 58 ("the size of the impact with the roof line is well within the realm of the knife . . . recovered from the scene"). Based on the detective's blood spatter training, he testified that the distinctive blood pattern around the puncture appeared to be "cast" or high velocity spatter different from the other blood that came directly from the victim's injury. *Id.* at 57-58. This indicated to him that there were at least two stabbing motions: the first that struck the victim and the second that struck the car where blood already on the knife was transferred onto the roof near the puncture. *Id.* at 58-59. The section of the roof with the puncture was cut off, and at the time of the hearing, it was being tested for tool marks in comparison with the knife. *Id.* at 58.

On the same day as the hearing, the court entered an opinion and order granting Appellee's *habeas corpus* motion in part and dismissing the charges of first- and second-degree murder.[2] On September 9, 2022, the Commonwealth appealed to this Court, certifying in the notice of appeal that the court's order will substantially handicap the prosecution of this case.

---

[2] The Commonwealth does not appeal the portion of the order dismissing the second-degree murder charge.

Accordingly, we have jurisdiction over this appeal pursuant to Pa.R.A.P. 311(d).

On September 13, 2022, the court ordered the Commonwealth to file a concise statement of errors complained of on appeal within the next thirty days. On October 9, 2022, the Commonwealth filed a concise statement arguing, *inter alia*, that the evidence was sufficient to proceed to trial on first-degree murder. On October 11, 2022, the court filed a Pa.R.A.P. 1925 opinion incorporating its August 22, 2022 opinion by reference. The court further observed:

> [I]t is clear that this court's dismissal of the first-degree murder charge was primarily based on the uncontradicted evidence presented by the Commonwealth at the hearing that the victim died as a result of a single stab wound to the upper left arm, that a layperson like [Appellee] would not have been aware of the anatomy which included the bariatric artery and vein, and that the upper arm is not a "vital organ" (**See**: Discussion regarding **Commonwealth v. Predmore**, [] 199 A.3d 925 (2018) [(*en banc*)]). Absent the use of a deadly weapon on a vital organ, the Commonwealth had no evidence of a specific intent to kill. Retrieving a knife from a kitchen, as [Appellee] did, in itself, does not evidence a specific intent to kill any more than the defendant in **Predmore** bringing a gun to that altercation.

Pa.R.A.P. 1925 Opinion, 10/11/22, at 1.

The Commonwealth raises the following issues in this appeal:

> 1. Did the trial court err in dismissing the first-degree murder charge by failing to view the evidence in the light most favorable to the Commonwealth when, in a *habeas corpus* hearing, the Commonwealth presented evidence that [Appellee] retrieved a large kitchen knife from inside a residence, returned to the victim's location, and fatally stabbed the victim?

2. Did the trial court err in permitting defense counsel, over the Commonwealth's objections, to question Commonwealth witnesses regarding inadmissible hearsay statements of [Appellee] and on matters beyond the scope of direct examination?

3. Did the trial court err in concluding in its opinion that "there was a claim of self-defense" at the habeas corpus hearing where no competent evidence supported such a finding, and the affirmative defense of self-defense is immaterial in a *habeas corpus* hearing?

Commonwealth's Brief at 7.

In its first issue, which we find dispositive, the Commonwealth asserts that the court erred in granting Appellee's *habeas corpus* petition and dismissing the charge of first-degree murder due to lack of evidence of specific intent. A petition for writ of *habeas corpus* is the correct method for testing whether the Commonwealth has, prior to trial, established a *prima facie* case. *Commonwealth v. Karlson*, 674 A.2d 249, 251 (Pa. Super. 1996). The *prima facie* hurdle is less demanding than the Commonwealth's burden at trial of proving guilt beyond a reasonable doubt. *Commonwealth v. McBride*, 595 A.2d 589, 591 (Pa. 1991). "[A] *prima facie* case exists when the Commonwealth produces evidence of each of the material elements of the crime charged and establishes probable cause to warrant the belief that the accused committed the offense." *Commonwealth v. Perez*, 249 A.3d 1092, 1102 (Pa. 2021). "Furthermore, the evidence need only be such that, if presented at trial and accepted as true, the judge would be warranted in permitting the case to be decided by the jury." *Id.* When determining

whether a *prima facie* case has been established, we must view the evidence in the light most favorable to the Commonwealth, giving effect to all inferences reasonably drawn from the evidence to support a verdict of guilt. ***Commonwealth v. Huggins***, 836 A.2d 862, 866 (Pa. 2002).

The evidentiary sufficiency of the Commonwealth's *prima facie* case is a question of law over which our standard of review is *de novo* and the scope of review is plenary. ***Perez***, 249 A.3d at 1102. We review a decision to grant the defendant's *habeas corpus* petition by examining the evidence and reasonable inferences in the light most favorable to the Commonwealth. ***Commonwealth v. Dantzler***, 135 A.3d 1109, 1111 (Pa. Super. 2016) (*en banc*).

An individual commits first-degree murder when he intentionally kills another human being; an intentional killing is defined as a "willful, deliberate and premeditated killing." 18 Pa.C.S.A. §§ 2501, 2502(a), (d). To sustain a conviction for first-degree murder, the Commonwealth must prove that: (1) a human being was unlawfully killed; (2) the accused was responsible for the killing; and (3) the accused acted with malice and a specific intent to kill. ***Commonwealth v. Ballard***, 80 A.3d 380, 390 (Pa. 2013). Specific intent may be formed in an instant, ***Commonwealth v. Mollett***, 5 A.3d 291, 313 (Pa. Super. 2010), and it can be discerned from the conduct and attending circumstances that show the perpetrator's state of mind. ***Commonwealth v. Gonzalez***, 858 A.2d 1219, 1223 (Pa. Super. 2004).

A factfinder may presume the intent to kill "based on the accused's use of a deadly weapon on a vital part of the victim's body," **Ballard**, 80 A.3d at 390, or in the "general area in which vital organs are located." **Commonwealth v. Padgett**, 348 A.2d 87, 88 (Pa. 1975). The deadly weapon presumption is a presumption of fact founded on human experience, since "one does not normally use a deadly weapon on a vital part of another's body unless he intends to kill." **Commonwealth v. O'Searo**, 352 A.2d 30, 37 (Pa. 1976). As a presumption of fact, the deadly weapon presumption "is nothing more than a *prima facie* inference" of intent. **Id.**

We caution, however, that while a specific intent to kill may be inferred using a deadly weapon on a vital part of another's body, the absence of the use of a deadly weapon against a vital part of the victim's body does not necessarily preclude a finding of specific intent to kill; it only precludes the use of the deadly weapon presumption. **Commonwealth v. Kluska**, 3 A.2d 398, 402 (Pa. 1939). In the absence of the presumption, the Commonwealth may still prove specific intent through other evidence. "The only requirement is that there be sufficient evidence to justify the jury's verdict which imports a finding of specific intent to kill." **Commonwealth v. Gidaro**, 70 A.2d 359, 362 (Pa. 1950) (citing **Commonwealth v. Logan**, 63 A.2d 28 (Pa. 1949)). This point is amply demonstrated in **Commonwealth v. Wyche**, 467 A.2d 636 (Pa. Super. 1983).

In **Wyche**, two men began shooting at the victim and his friend while they were on their way to pick up pizza. They successfully ran away, but a short time later were confronted by another man, the defendant. As they began to run again, the defendant shot at them. The victim was shot three times, once in the right thigh, once in the right hand, and once in the pelvic area through the right buttock. He died of bleeding caused by the latter bullet, which damaged major blood vessels and internal organs after entry. The defendant argued that the evidence was insufficient to support a finding of first-degree murder, since no specific intent to kill could be inferred from a bullet shot into the buttocks. We rejected this argument, stating that *all direct and circumstantial evidence, and all reasonable inferences arising therefrom*, accepted as true, revealed that the defendant aggressively attacked the victim, shooting four shots, three of which hit their target. Although the fatal slug entered the victim through the buttock, the jury could properly infer the specific intent to kill from these circumstances. **Id.**, 467 A.2d at 637 (citing **Commonwealth v. Padgett**, 348 A.2d 87 (Pa. 1975)). Thus, without deciding whether the deadly weapon presumption was applicable, we still concluded that the evidence was sufficient to support a specific intent to kill.

Presently, the trial court granted *habeas* relief on the charge of first-degree murder on the following grounds: (1) the uncontradicted evidence was that the victim died as a result of a single stab wound to the upper left arm, (2) a layperson like Appellee would not have been aware of the anatomy of

the upper arm, which included the bariatric artery and vein, and (3) the upper arm is not a "vital organ". The court concluded that absent the use of a deadly weapon on a vital organ, there was no evidence of a specific intent to kill. Our discussion above demonstrates that the court erred by not fully considering the totality of the Commonwealth's evidence. The law provides that even in the absence of the presumption, a specific intent to kill may be inferred when the totality of the evidence and reasonable inferences arising therefrom are properly considered. **Gidaro**, **Wyche**, **supra**.

In this case, the evidence adduced during the *habeas corpus* hearing, accepted as true, demonstrates that Appellee fatally stabbed the victim with a kitchen knife in his left arm, severing the brachial artery, during the second confrontation on the street. Plausibly, the deadly weapon presumption may apply on the ground that the brachial artery was a vital part of the victim's body. Even assuming that the deadly weapon presumption does not apply, other evidence introduced during the *habeas corpus* hearing, viewed in its totality, constitutes *prima facie* evidence of Appellee's specific intent to kill. First, the sequence of events leading up to the fatal attack indicates that Appellee harbored the intent to kill the victim. After Appellee and the victim had their initial confrontation on the street, Appellee **then** walked into the house and retrieved a deadly weapon (the kitchen knife), returned to the street, and then confronted the victim for a second time and inflicted the fatal wound. When, as here, the defendant procures a deadly weapon and brings

it from some distance to the scene of a fatal attack, the factfinder may infer that the defendant planned to commit murder. *See Commonwealth v. Pursell*, 495 A.2d 183, 187 (Pa. 1985) ("[s]ince the victim was assaulted with a rock [that the defendant] carried two hundred feet from its natural resting place, the jury could conclude that the killing was premeditated").

Second, Appellee killed the victim by stabbing him at close range. As our Supreme Court recently observed, "the intimacy involved in stabbing one's victim to death clearly indicates malice and specific intent." *Ballard*, 80 A.3d at 390.

Third, Detective Martin testified that the puncture on the roof appeared consistent with the knife blade used to kill the victim. He stated that the distinctive blood pattern around the roof puncture appeared to be "cast" or high velocity spatter different from the other blood that came directly from the victim's injury. From these facts, the detective deduced that Appellee made at least two stabbing motions: the first that struck the victim and the second that transferred the victim's blood from the knife blade to the car. The fact that Appellee made multiple stabbing motions is indicative of his intent to commit murder. Accepted as true, the detective's testimony of two stabbing motions and blood on the roof puncture demonstrates that Appellee first stabbed the victim and then pierced the roof in a second attempt to stab the victim.

Fourth and finally, after the stabbing, Appellee exited the scene, cleaned off the knife, and left it in the kitchen sink inside the house, details that show Appellant's consciousness of guilt. *Commonwealth v. Taylor*, 2021 WL 4453459, *4 (Pa. Super., Sep. 29, 2021)[3] (where defendant fatally stabbed victim, left their apartment, and threw murder weapon onto roof of apartment building, such evidence was consciousness of guilt and may form basis of conviction along with other evidence from which guilt may be inferred); *Commonwealth v. Gonzalez*, 858 A.2d 1219, 1223 (Pa. Super. 2004) (actions that attempt to conceal crime or destroy evidence are admissible to prove malice in first degree murder case and to show consciousness of guilt). Notably, Appellee also was held for court at the preliminary hearing on a charge of tampering with evidence of crime which the trial court did not dismiss after the *habeas corpus* hearing.

The totality of evidence presented against Appellee distinguishes this case from *Predmore*, a decision relied upon by the trial court in its Rule 1925 opinion and in this Court by the learned dissent. In *Predmore*, a woman's current and former boyfriends had an argument in a parking lot outside the woman's residence. The current boyfriend (the defendant) retrieved a gun from his vehicle in the parking lot and fired three shots at the former boyfriend, two of which struck his calves. This Court affirmed the trial court's

---

[3] *See* Pa.R.A.P. 126(b) (non-precedential memoranda of Superior Court filed after May 1, 2019 may be cited for their persuasive value).

order granting the defendant's motion to dismiss the charge of attempted murder for failure to present *prima facie* evidence of specific intent. The majority reasoned, despite vigorous dissents:

> When we review evidence in a light most favorable to the Commonwealth, we are not obliged to outright ignore undisputed evidence so as to strengthen the reasonableness of inferences we draw from the remaining evidence. Instead, we review all of the evidence, and ascertain whether certain inferences suggested by the Commonwealth are reasonable; that is, whether it is reasonable to permit a jury to conclude that Appellee possessed the specific intent to kill [the former boyfriend] in the unique circumstances of this case. In this regard, the Commonwealth essentially asks this Court to ignore: the victim's unprovoked instigation of a confrontation with the new boyfriend of his ex-girlfriend, the complete lack of any verbal expression of intent to kill by Appellee despite the scuffle that occurred before the shooting, and the near impossibility of Appellee's missing any area near a vital portion of the victim's body from the range at which he fired, but for an intent to scare or harm that fell short of specific intent to kill. To ask a jury to find that Appellee possessed the specific intent to kill in these circumstances is tantamount to asking them to rest a verdict on mere speculation or conjecture that Appellee just happens to be the world's worst shot, or that the victim only escaped more serious injury due to divine intervention. While not impossibilities in the strictest sense, such inferences are simply not reasonable in the unique circumstances of this case.

*Id.*, 199 A.3d at 934.

Multiple distinctions exist between the present case and **Predmore**. All events in **Predmore** took place in the same location, a parking lot, and in rapid sequence. In the present case, the events were more drawn out and at more than one location. An initial confrontation between Appellee and the victim took place in the street. Then, Appellee left the street, went into the residence, procured a knife from the kitchen, returned to the street, and

stabbed the victim. Given this more protracted chain of events, Appellee's decision to attack the victim could be deemed more deliberate and cold-blooded, raising a stronger inference of specific intent than in **Predmore**. Further, unlike in **Predmore**, Appellee committed a stabbing at close range. As we said above, "the intimacy involved in stabbing one's victim to death clearly indicates malice and specific intent." **Ballard**, 80 A.3d at 390. Additionally, **Predmore** expressly acknowledged that damage to a major blood vessel by a deadly weapon constitutes a wound to the victim's vital part for purposes of the intent presumption. **Id.** at 934. While that injury did not occur in **Predmore**, it is precisely what took place here. Finally, in **Predmore**, there was no evidence that the defendant fled from the scene or discarded the weapon. Here, Appellee fled from the scene of the stabbing, wiped blood off of the knife to conceal its use as the murder weapon, and discarded it in a sink. In view of these many differences, **Predmore** does not govern the outcome of this case.

Respectfully, for the reasons discussed above, the learned dissent misapplies **Predmore** but moreover, does not consider all the *prima facia* evidence presented against Appellee.

The dissent fails to give the Commonwealth the benefit of all reasonable inferences from its *prima facia* evidence and instead engages in its own weighing of the evidence. The dissent insists that the fact Appellee left the initial altercation and returned with a kitchen knife, does not prove specific

intent absent "further evidence concerning the circumstances of the initial altercation, Appellee's involvement, or the nature of any conflict between Appellee and the victim." Dissent at 3; *see also id.* at n.1 ("in the absence of other evidence reflecting Appellee's specific intent to kill, I cannot conclude that by bringing a kitchen knife to the scene of an altercation, Appellee had a conscious purpose to bring about death"). The dissent overlooks that there indeed was considerable additional *prima facie* evidence of specific intent after Appellee's return (the stabbing, Appellee's flight, the puncture on the car roof, and Appellee's cleaning and abandonment of the knife) that the dissent does not consider. Under this totality of the circumstances, the Commonwealth was entitled to a logical inference from Appellee's conduct under *Huggins* that Appellee's reason for leaving the initial altercation and returning to the scene with a kitchen knife was to engage in deadly violence against the victim. The dissent only reaches a contrary conclusion by impermissibly weighing the evidence.

The dissent also engages in impermissible weighing when it claims the fact that the stabbing took place at close range does not constitute *prima facie* evidence of specific intent. The dissent seems to suggest that firing a gun at close range is indicative of specific intent, but stabbing the victim at close range is not. This distinction is unpersuasive; there is simply no reason why use of a knife at close range may not be as indicative of specific intent as use of gun at close range. Moreover, the dissent's attempt to downplay use of a

knife at close range flies in the face of our Supreme Court's pronouncement in **Ballard** that the "intimacy involved in stabbing one's victim to death clearly indicates . . . specific intent." **Id.**, 80 A.3d at 390.

The dissent, again by impermissibly weighing the evidence, further insists that the police detective's testimony about the puncture on the car roof demonstrates nothing, because "none of the witnesses testified that **anyone** had stabbed the vehicle . . . nor was there any evidence that the knife or object used to strike the vehicle was specifically directed towards the victim, who was not the driver." Dissent at 6 (emphasis in original). The dissent fails to interpret the evidence and all reasonable inferences therefrom in the light most favorable to the Commonwealth. The detective testified that the puncture was both bloody and consistent with the knife used to stab the victim. This testimony, conjoined with the fact that Appellee stabbed the victim, establishes *prima facie* evidence of specific intent by demonstrating that Appellee repeatedly thrust his knife during the altercation.

Finally, with regard to Appellee's conduct after the stabbing, the dissent contends that cleaning the knife and returning it to the sink only indicates "consciousness of guilt with respect to the stabbing, rather than evidence of Appell[ee]'s intent to commit first-degree murder." **Id.** We read the dissent to mean that the evidence shows Appellee's consciousness of guilt only for aggravated assault (a charge for which he was held for court but did not seek to dismiss in his *habeas corpus* motion) but not for first-degree murder. This

attempt to draw a line between consciousness of guilt for aggravated assault and consciousness of guilt for murder is wholly unconvincing, given our duty at this stage of the case to construe the evidence in the light most favorable to the Commonwealth. Appellee's acts of flight, washing the blood off the knife and abandoning the knife in the kitchen, read collectively with the other evidence, constitutes *prima facie* evidence of his consciousness of guilt for both aggravated assault and first-degree murder. **Taylor, Gonzalez, supra.**

For the foregoing reasons, we hold that the evidence adduced during the *habeas corpus* hearing constituted *prima facie* evidence of Appellee's specific intent to kill to support a charge of first-degree murder. Accordingly, the court below erred by concluding that the Commonwealth failed to present *prima facie* evidence of specific intent and by dismissing the charge of first-degree murder. We, therefore reverse the portion of the trial court's order dismissing the charge of first-degree murder from count 1 of the information

and remain with instructions to hold Appellee for trial on that charge as well.[4],[5]

_____

[4] The Commonwealth raises two additional issues in its brief: whether the court erred by (1) permitting defense counsel to question Commonwealth witnesses during the *habeas corpus* hearing with regard to Appellee's inadmissible hearsay and (2) concluding in its opinion that there was a claim of self-defense at the *habeas corpus* hearing. According to the Commonwealth, both of these issues demonstrate that the court below allowed evidence that fell outside the bounds of *habeas corpus* proceedings and failed to examine the evidence in the light most favorable to the Commonwealth. We need not consider these issues given our decision that the evidence during the *habeas corpus* hearing permits the Commonwealth to proceed to trial on the first-degree murder charge.

[5] We affirm the portions of the order that dismissed the charge of second-degree murder and that left intact the remaining charges in Count 1, third-degree murder, voluntary manslaughter, and involuntary manslaughter.

Order affirmed in part and reversed in part. Case remanded for further proceedings to include a charge of first-degree murder. Jurisdiction relinquished.

President Judge Emeritus Stevens joins the Opinion.

Judge Nichols files a Dissenting Opinion.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/17/2024