J-S06024-23

2024 PA Super 127

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
:
:
v. :
:
:
:
ISAIAH SCOTT NEWTON : No. 1283 MDA 2022

Appeal from the Order Entered August 22, 2022
In the Court of Common Pleas of Columbia County Criminal Division at
No(s): CP-19-CR-0000310-2022

BEFORE: STABILE, J., NICHOLS, J., and STEVENS, P.J.E.[*]

DISSENTING OPINION BY NICHOLS, J.: **FILED: JUNE 17, 2024**

I respectfully disagree with the Majority's conclusion that the Commonwealth presented sufficient evidence to establish specific intent for first-degree murder. I also reject the Majority's assertion that the deadly weapon presumption applied under the specific circumstances of this case. Therefore, I respectfully dissent.

Initially, there is no dispute that, following an altercation during which multiple individuals were present, Appellee retrieved a kitchen knife from a nearby residence, used the knife to stab the victim in the left bicep, and that the victim later died as a result of the stab-wound severing the brachial artery located in his arm.

In its opinion, the Majority states that "[p]lausibly, the deadly weapon presumption may apply on the ground that the brachial artery was a vital part

_____

[*] Former Justice specially assigned to the Superior Court.

of the victim's body." Maj. Op. at 10. Although I agree that a knife is a deadly weapon, the Majority has not identified case law establishing that a person's arm is a vital part of the body for purposes of employing the intent presumption for first-degree murder in a stabbing case. *Cf. Commonwealth v. Styler*, 600 A.2d 1300, 1302 (Pa. Super. 1991) (concluding that the trial court erred in quashing a first-degree murder charge at the preliminary hearing stage where the defendant used a knife to stab the victim in the chest).

Further, the Commonwealth did not present any evidence that Appellee stabbed the victim in his arm with the specific intent to kill, other than asserting that the victim succumbed to the stab wound. In its opinion, the Majority emphasizes four points in support of its conclusions regarding intent.[1]

First, the Majority states that "the sequence of events leading up to the fatal attack indicates that Appellee harbored the intent to kill the victim" because "[a]fter Appellee and the victim had their initial confrontation on the street, Appellee then walked into the house and retrieved a deadly weapon (the kitchen knife), then returned to the street, and **then confronted the victim for a second time** and inflicted the fatal wound." Maj. Op. at 10

---

[1] In its opinion, the Majority opines that the trial court "erred by not fully considering the totality of the Commonwealth's evidence." Majority Op. at 10. However, I would conclude that the trial court's finding was based on the fact that there was no specific intent evidence, not because the trial court failed to consider the evidence. *See* Trial Ct. Op., 10/11/22, at 1 (stating that "[a]bsent the use of a deadly weapon on a vital organ the Commonwealth had no evidence of a specific intent to kill.").

(emphasis added); *see also id.* at 13 (stating that "[a]n initial confrontation between Appellee and the victim took place on the street" before the stabbing incident occurred).

However, the record contains **no evidence** concerning the circumstances of the initial altercation, nor any evidence establishing that the altercation was between Appellee and the victim. At the *habeas* hearing, Detective Gregory Martin testified that he interviewed Appellee at the station after the incident occurred, at which time Appellee "stated there had been an altercation outside" and that "during the altercation[, Appellee] left the backyard, went inside the house, retrieved a knife, and came back outside," before stabbing the victim one time. N.T. *Habeas* Hr'g, 8/22/22, at 50. Detective Martin also testified that all of the witnesses provided "general statements" about the altercation and that police did not know "who [from the group] was being physical with who." *Id.* at 73-74; *see also* Commonwealth's Brief at 15 (noting that the stabbing incident followed "some sort of initial altercation"). The Commonwealth presented no further evidence concerning the circumstances of the initial altercation, Appellee's involvement, or the nature of any conflict between Appellee and the victim. Therefore, to the extent the Majority concludes that the events preceding the incident are evidence of specific intent, I disagree.[2]

_____

[2] In its opinion, the Majority relies on **Commonwealth v. Pursell**, 495 A.2d 183, 187 (Pa. 1985) and concludes that "[w]hen, as here, the defendant
*(Footnote Continued Next Page)*

Second, the Majority emphasizes that "Appellee killed the victim by stabbing him at close range." Maj. Op. at 11 (citing **Commonwealth v. Ballard**, 80 A.3d 380, 390 (Pa. 2013) (stating that "the intimacy involved in

_____

procures a deadly weapon and brings it from some distance to the scene of a fatal attack, the factfinder may infer that the defendant planned to commit murder." Maj. Op. at 10-11. In **Pursell**, the defendant was charged with first-degree murder after he violently assaulted and killed a thirteen-year-old boy in a park. **Pursell**, 495 A.2d at 185-86. On appeal, our Supreme Court explained:

> [T]he victim had sustained fifteen blows to the head with a jagged, blunt object, and had suffered various bruises, a broken nose, internal hemorrhaging in the neck, swollen eyes, and a crushed windpipe. The crushed windpipe was determined to be the cause of death. After the victim's death, his body was subjected to burns on parts of the torso, and trauma to the chest and scrotum, part of which was crushed.

**Id.** at 186. Ultimately, the **Pursell** Court concluded that "**[f]rom the nature of the injuries**, a jury could further infer that **the homicide was intentional and malicious**. Since the victim was assaulted with a rock carried two hundred feet from its natural resting place, the jury could conclude that the killing was premeditated." **Id.** at 187 (emphasis added). **Pursell** is clearly distinguishable on its facts.

Further, in the absence of other evidence reflecting Appellee's specific intent to kill, I cannot conclude that by bringing a kitchen knife to the scene of an altercation, Appellee had a conscious purpose to bring about death. **See** 18 Pa.C.S. § 2502(a), (d) (stating that "[a] criminal homicide constitutes murder of the first degree when it is committed by an intentional killing" which is defined as "willful, deliberate and premeditated"); **Commonwealth v. Randolph**, 873 A.2d 1277, 1281 (Pa. 2005) (reiterating that "[a] 'willful, deliberate and premeditated killing' occurs where the actor has manifested the specific intent to end the life of the victim") (citation omitted); **cf. Commonwealth v. Ballard**, 80 A.3d 380, 391 (Pa. 2013) (reflecting that the defendant murdered four victims shortly after purchasing a "survival combat-type" knife that the defendant was "meticulous and purposeful in selecting").

- 4 -

stabbing one's victim to death clearly indicates malice and specific intent")).[3]

The ordinary meaning of "stab" is "to wound or pierce by the **thrust** of a pointed object or weapon." (emphasis added)[4]  Unlike firearms, knives do not typically contain projectiles that can be fired at a target from a range of distances.  As such, because the use of a knife would almost always require an actor to be within "close range" when inflicting a stab-type injury, I disagree with the Majority's conclusion that a stabbing at "close range" is necessarily indicative of a person's specific intent to **kill** – especially under the circumstances of this case, where the ultimately fatal wound was to the victim's arm.  *Cf. Commonwealth v. Holt*, 273 A.3d 514, 530 (Pa. 2022) (stating that "[i]t is obvious that aiming a gun at a human being and firing multiple shots at close range can result in death"); *Commonwealth v. Fisher*, 769 A.2d 1116, 1124 (Pa. 2001) (concluding that the defendant "acted with the conscious purpose to bring about [the victim's] death" based on evidence that the defendant "entered [the victim's] apartment in the early

---

[3] To the extent the Majority relies on *Ballard*, that case is also distinguishable. *See Ballard*, 80 A.3d at 391 (affirming the defendant's convictions for multiple counts of first-degree murder and explaining that "the nature of the killings, which [the defendant] alone committed without an accomplice, established malice and specific intent" because the four victims "were each stabbed numerous times ([one victim], who was the object of [the defendant's] jealousy, suffered forty-three wounds)" with a specific knife that the defendant purchased specifically for that purpose).

[4] *See* "Stab," Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/stab (last accessed May 28, 2024).

hours of the morning and shot [the victim] three times in the chest at close range with a rifle while he slept").

Third, the Majority emphasizes Detective Martin's testimony "that the puncture on the roof [above the driver's door] appeared consistent with the knife blade used to kill the victim" and concludes that "[a]ccepted as true, the detective's testimony of two stabbing motions and blood on the roof puncture demonstrates that Appellee first stabbed the victim and then pierced the roof in a second attempt to stab the victim." Maj. Op. at 11. However, Detective Martin acknowledged that none of the witnesses stated that **anyone** had stabbed the vehicle, **see** N.T. *Habeas* Hr'g at 59-60, nor was there any evidence that the knife or object used to strike the vehicle was specifically directed towards the victim, who was not the driver.

Finally, I agree with the Majority that Appellee's behavior after the stabbing (*i.e.* cleaning the knife and returning it to the kitchen sink) is evidence demonstrating consciousness of guilt. However, I conclude that this evidence goes to Appellee's consciousness of guilt with respect to the stabbing, rather than evidence of Appellee's intent to commit first-degree murder. **Cf. Commonwealth v. Smyrnes**, 154 A.3d 741, 746-47 (Pa. 2017) (finding sufficient evidence to support the defendant's first-degree murder conviction and emphasizing that there was "much evidence of consciousness of guilt on [the defendant's] part, including his participation in attempting to create the appearance of a suicide, removing the victim's body from his apartment, and cleaning up the crime scene").

In sum, I acknowledge that at the *habeas* stage, "the evidence need only be such that, if presented at trial and accepted as true, the judge would be warranted in permitting the case to be decided by the jury." **See Commonwealth v. Perez**, 249 A.3d 1092, 1102 (Pa. 2021) (citation omitted). However, on this record, I would conclude that the Commonwealth failed to present evidence that would allow a jury to infer that Appellee specifically intended to **kill** the victim, which is required in a prosecution for first-degree murder. **See Commonwealth v. Wesley**, 753 A.2d 204, 208 (Pa. 2000) (reiterating that specific intent to kill "is the element that distinguishes first-degree murder from other degrees of murder").

Like in **Predmore**, the Commonwealth failed to present any evidence from which a jury could infer specific intent, and "[t]o ask a jury to find that [the a]ppellee possessed the specific intent to kill in these circumstances is tantamount to asking them to rest a verdict on mere speculation or conjecture." **Commonwealth v. Predmore**, 199 A.3d 925, 934 (Pa. Super. 2018). Unlike other cases discussed herein, there was no evidence concerning the initial confrontation, nor any indication that Appellee acted with a conscious purpose to cause the victim's death.

For these reasons, I would affirm the trial court's order dismissing the charge of first-degree murder on the ground that the Commonwealth failed to present *prima facie* evidence of Appellee's specific intent and dissent from the Majority's decision to reverse that portion of the order.

For these reasons, I dissent.